Lisa CHESNUT, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–96–00212–CR.

Court of Appeals of Texas,
El Paso.

Nov. 20, 1997.

M. Clara Hernandez, El Paso County Public Defender, El Paso, for Appellant.

Jaime E. Esparza, District Attorney, El Paso, for State.

Before LARSEN, McCLURE and CHEW, JJ.

## OPINION

McCLURE, Justice.

Lisa Chesnut appeals her conviction for theft. Upon the court's finding of guilty, punishment was assessed at 2 years' confinement probated for 5 years and confinement in the El Paso County Jail for 30 days as a condition of probation. Finding the evidence to be sufficient, we affirm.

## I. FACTUAL SUMMARY

On October 19, 1995, Chesnut was indicted for theft of over $1,500 or more but less than $20,000 from Julie Zitnik. Chesnut had been hired by Zitnik in approximately September of 1994 for babysitting and housecleaning purposes. In February 1995, Zitnik noticed that a $1,000 savings bond was missing from her home. Between February and May 1995, Zitnik began noticing other items missing, including bungee cords, batteries, and a house key. On July 15, 1995, Zitnik noticed that her daughter's Gameboy was missing. She had been playing with it the previous Tuesday and on Wednesday, Chesnut had come to babysit. Zitnik then decided to check her jewelry and discovered several items missing, including a teardrop diamond necklace, a tennis bracelet, a pair of earrings, and a pearl and diamond necklace. On Sunday, July 16, 1995, Zitnik reported the theft to the police. The following Monday, Zitnik noticed a car similar to Chesnut's driving past Doniphan Pawn and Surplus. She decided to check the pawn shop for her missing jewelry. Zitnik spoke with the pawn shop employee and described her jewelry and told her who she believed took the items. The employee indicated that Chesnut had just left the shop. She showed Zitnik the items that Chesnut had pawned which included the Gameboy and a ring of Zitnik's daughter which she was unaware had been taken. On July 20, 1995, Zitnik returned to the pawn shop with Detective Huerta, who took the statements of the employees.

At trial, the State introduced the pawn ticket which showed Chesnut's signatures. Zitnik testified that she was familiar with Chesnut's handwriting and that the signature at the top of the ticket more resembled Chesnut's signature than did the bottom signature, but that she believed they were both Chesnut's signatures. The State also introduced a copy of the bill of sale, another pawn ticket, and the computer-generated information from the shop indicating that the transaction was made by Chesnut and showing her home address. Testimony by a police officer revealed that in order to pawn property, the person must show a driver's license for identification.

Chesnut testified that she did not steal any property. Instead, she claimed that her friend, Audra, had come to the Zitnik home on a number of occasions when she was babysitting. Chesnut testified that she had given Audra and her boyfriend a ride home one evening. The next morning, she realized that her wallet was missing. When Audra contacted Chesnut two days later, she confirmed that her boyfriend had taken it. On May 15, 1995, Chesnut reported her wallet stolen to the police. On May 17, 1995, she reported to the police that the wallet had been recovered. Chesnut further testified that although the wallet was returned, the driver's license and phone card were not. She stated that these items were not returned to her until the end of July, subsequent to the dates the jewelry was pawned. However, Chesnut at no time related to the police that the driver's license and phone card were still missing.

Chesnut further testified that the signatures on the pawn tickets were not hers. She contends that the signatures were false and relies on the differences in the "s" in Chesnut (one printed and one written in cursive). The court took judicial notice of a court setting and waiver of arraignment signed by Chesnut. On one document, the "s" is written in cursive and on the other, the "s" is printed.

Chesnut testified that she had been diagnosed for cervical cancer and was on medication. However, at the punishment stage of the trial, testimony by the probation officer indicated that after checking with Chesnut's physicians, he discovered that she had been diagnosed not with cervical cancer, but with a sexually transmitted disease.

### FACTUAL INSUFFICIENCY

In her sole point of error, Chesnut argues that the evidence is factually insufficient to support her conviction. In reviewing factual sufficiency, this Court considers all of the evidence, but does not view it in the light most favorable to the verdict. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996); *Taylor v. State*, 921 S.W.2d 740, 745 (Tex.App.—El Paso 1996, no pet.). We will set aside the verdict only if it is so contrary

to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* The Court of Criminal Appeals noted in *Clewis* that Texas courts have articulated the standard for factual sufficiency review in various ways. *Clewis*, 922 S.W.2d at 134 n. 16. The standard stated in *Clewis*, and that generally followed by this Court, are, as applied, identical. *See id.* Accordingly, for purposes of a factual sufficiency review of a criminal conviction, we have adopted the factual sufficiency analysis which has historically been applied to civil cases as found in *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

There is a natural difficulty with applying the traditional factual sufficiency review to criminal proceedings arising from the requisite burden of proof required for conviction. An analysis of the factual sufficiency review drawn from the civil arena implicates a burden of preponderance of the evidence. Indeed, what has become boiler plate language in civil opinions are such phrases as "against the great weight and preponderance of the evidence" and "no more than a scintilla." These civil concepts have emerged in post-*Clewis* opinions addressing factual sufficiency review. To eliminate any confusion, we find it important to distinguish here between the burden of proof in the trial court and the appropriate appellate standard of review. We have recently addressed this distinction in *In the Interest of B.R.*, 950 S.W.2d 113 (Tex.App.—El Paso 1997, no writ), in the context of a termination proceeding in which the requisite burden of proof is clear and convincing evidence. In concluding that a heightened standard of review was required, we noted:

> Because this case involves an elevated standard of proof in the trial court, we must initially address whether we apply a heightened standard of review in this Court. Stated simply, the question is whether evidence sufficient to support a fact-finding by a preponderance of the evidence is equally sufficient to support a fact-finding by clear and convincing evidence. Because we believe the traditional factual sufficiency review is inapplicable to

an enhanced burden of proof, we answer this question in the negative and conclude that a stricter scrutiny is required.

. . .

Like the Dallas Court of Appeals in *Neiswander*, we find it incongruous to require the trial court to apply an enhanced burden of proof when deciding the issues while requiring the appellate court to apply the standard of review accorded to issues decided by a preponderance of the evidence. Accordingly, where the burden of proof at trial is by clear and convincing evidence, we will apply the higher standard of factual sufficiency review first articulated in *Neiswander*. After considering all of the evidence, we must determine, not whether the trier of fact could reasonably conclude that the existence of a fact is more probable than not, as in ordinary civil cases, but whether the trier of fact could reasonably conclude that the existence of the fact is highly probable.[1] Under this standard, we must consider whether the evidence was sufficient to produce in the mind of the fact finder a firm belief or conviction as to the truth of the allegations sought to be established. *Mezick*, 920 S.W.2d at 430; *In the Interest of P.S. and L.S.*, 766 S.W.2d 833, 835 (Tex.App.—Houston [1st Dist.] 1989, no writ). We will sustain an insufficient evidence point of error only 'if the fact finder could not have reasonably found the fact was established by clear and convincing evidence.' *Mezick*, 920 S.W.2d at 430, *quoting Williams*, 788 S.W.2d at 926.

*In the Interest of B.R.*, 950 S.W.2d at 117–19.

Without question, the burden of proof shouldered by the State in a criminal proceeding is more stringent still. The elements of the offense must be established beyond a reasonable doubt. Applying a heightened standard of review to this enhanced burden of proof, we conclude that we must balance all of the evidence, both the evidence which tends to prove the existence

---

1.  As noted by the Fort Worth Court of Appeals in its decision originally adopting the higher standard of review, the phrase "highly probable" is merely a synonym for "clear and convincing." *In the Interest of L.R.M. and J.J.M.*, 763 S.W.2d at 66; *Neiswander*, 645 S.W.2d at 835–36.

of a vital fact as well as evidence which tends to disprove its existence, to determine whether any rational trier of fact could find the essential elements as alleged in the charge to the jury beyond a reasonable doubt. The verdict here is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. Chesnut provides no evidence other than her own self-serving testimony. While she asserts that the evidence may be viewed in ways that exonerate her of the theft, the cumulative effect of these inferences do not so overwhelm the solid inference linking Chesnut to the theft such that justice demands a new trial. At most, her arguments demonstrate that the inferences linking her to the theft could have been stronger.

 Chesnut argues that the State's evidence consisted entirely of circumstantial evidence and that the verdict was clearly wrong and unjust and contrary to the overwhelming weight of the evidence. This argument is without merit. The standard of review is the same for both direct evidence and circumstantial evidence cases; the "outstanding reasonable hypothesis" construct is no longer viable. *Brown v. State*, 911 S.W.2d 744, 745–46 (Tex.Crim.App.1995); *Geesa v. State*, 820 S.W.2d 154, 158, (Tex.Crim.App.1991); *Desselles v. State*, 934 S.W.2d 874 (Tex.App.— Waco 1996, no pet.). We agree with the Waco Court that the construct was "jettisoned ... as an appellate standard, not because the reviewing court in legal sufficiency cases must view the evidence through the *Jackson* prism, but because circumstantial evidence was considered to stand on an equal plane with direct evidence." *Desselles*, 934 S.W.2d at 878. We likewise conclude that whether we are reviewing legal or factual insufficiency, we weigh direct and circumstantial evidence equally. As an empirical matter, circumstantial evidence often has equal or even greater probative value than direct evidence. *Brown*, 911 S.W.2d at 745. It is not for the reviewing court to pass on the weight or credibility of the witnesses' testimony. Where there is conflicting evidence, the trial court's verdict of such matters is generally regarded as conclusive. *Taylor*, 921 S.W.2d at 746.

During the punishment stage, the court acknowledged that Chesnut was less than candid to the court throughout the proceedings. From the face of the record, it is apparent that the trial court weighed the credibility of Chesnut and that of the other witnesses and chose to credit more weight to the testimony of the State's witnesses. We overrule her sole point of error.

## PRESERVATION OF ERROR

 Although we have concluded that the evidence is factually sufficient to support the conviction, we pause to consider the State's argument that Chesnut failed to preserve her factual sufficiency claim because it was not raised at the trial court level by a motion for new trial. We reiterate the position taken in *Davila v. State*, 930 S.W.2d 641 (Tex.App.— El Paso 1996, pet. ref'd), that a motion for new trial is not a prerequisite to preserving a factual sufficiency complaint in criminal cases. Factual insufficiency claims may be raised for the first time on appeal.

The judgment of conviction is affirmed.