COURT OF APPEALS









COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS

 


 
 
  
 JERRY DEAN JACKSON,
  
                             Appellant,
  
 v.
  
  
 THE STATE OF
 TEXAS,
  
                             Appellee.
 
 
  
 '
    
 '
    
 '
    
 '
    
 '
    
  ' 
  
 
 
  
  
                 No. 08-01-00090-CR
  
 Appeal from
  
 238th District Court
  
 of Midland County, Texas 
  
 (TC# CR26082) 
  
 
 


 

O P I N I O N

 

In four points, Jerry Dean Jackson
appeals his conviction for aggravated assault, for which he was sentenced to
ten years= imprisonment.  We affirm.

Facts








Jerry Dean Jackson was indicted on
August 9, 2000 for aggravated sexual assault of Doris Jean Harris.  He was reindicted
December 20.  The new indictment included
the aggravated sexual assault count and added a count for aggravated
assault.  With respect to the latter
count, the indictment alleged that on May 4, 2000, Jackson intentionally and
knowingly threatened Harris with imminent bodily injury and that he used and
exhibited a deadly weapon, to-wit:  a
flashlight, during the assault.  Further,
the indictment alleged that Jackson intentionally, knowingly, and recklessly
caused bodily injury to Harris by hitting and striking her on or about the head
and body with the flashlight.  Jackson
pleaded not guilty.

A jury trial began January 23, 2001
at which several witnesses, including Jackson and Harris, testified.  The following recitation of events arises
from the testimony of Jackson and Harris.

On the evening of May 3, 2000,
Jackson encountered Harris at the store. 
Jackson and Harris had previously lived together and had a romantic
relationship.  By May 2000, however, that
relationship had ceased.

The two walked to Jackson=s residence, which was essentially a
hole in a wall or Abunker@ without plumbing. 
Jackson testified that when the two reached the bunker, he warned Harris
to watch her step because Harris had never been to the bunker before.  He stated that he walked into the bunker
before Harris and he helped her in.  The
two talked and shared a bottle of wine. 
Harris asked Jackson for money.

The two also had sex.  Afterward, Jackson stated he went outside to
relieve himself.  As soon as he returned,
Harris asked him for money.  Jackson told
Harris he did not have any money.  Then,
Jackson went back out again.  When he
returned, Harris was sitting in a chair. 
At that time, Harris stabbed Jackson.








Jackson testified that Harris began
the altercation, against which he defended himself.  He stated he might have used a weapon during
the fight--the flashlight--but that he did not realize it was a flashlight.  He testified that eventually the fight ended and
he took Harris=s knife away from her.  The two talked and agreed to stop
fighting.  Jackson stated that Harris
went outside and then came back.  He told
her to lay down and the two went to sleep.  He was next awakened by the police.

As a result of the altercation,
Jackson was stabbed twice:  once in the
neck and once in the chest.  He admitted
hitting Harris but stated that he had done so only after she came at him with
her knife.

Conversely, Harris testified that she
had gone walking with Jackson.  When they
reached the bunker, he pushed her in. 
Jackson then straddled her and began to hit her in the head with a
flashlight.  Harris claimed Jackson told
her he was going to kill her, to beat her to death.  Jackson beat her unconscious.  When she came to, Jackson struck her again
and Harris stabbed him with her pocketknife. 
Jackson bit her and continued to hit her with the flashlight, and Harris
blacked out again.

When she next awoke, Harris realized
she was completely unclothed and was in pain. 
Afraid for her life, Harris ran out of the bunker without any clothes
on.  She ran to the Midland Detention
Center.








At trial, Harris could not remember
whether she had stabbed Jackson before or after he began hitting her with the
flashlight.  However, she stated that she
had used her knife in self-defense; she had not used it before Jackson attacked
her.[1]

On May 6, 2000, a warrant was issued
for Jackson=s arrest.  He was located at the bunker where Harris had
indicated she had been assaulted.

At the conclusion of the trial, the
court declared a mistrial on the aggravated sexual assault count.  The jury found Jackson guilty beyond a
reasonable doubt of the aggravated assault as charged in the indictment, despite
his claim that he acted in self-defense. 
Punishment was assessed by the court at ten years in the Institutional
Division of the Texas Department of Criminal Justice.

Notice of appeal was filed.  A motion for new trial was also filed, on the
ground that the verdict was contrary to the law and evidence.  No action was taken on the motion.

Factual Sufficiency of the Evidence

In his first of four points on
appeal, appellant argues that the evidence is factually insufficient to support
his conviction.  We disagree.








A person commits aggravated assault
if he intentionally, knowingly, or recklessly causes bodily injury to another
and uses or exhibits a deadly weapon during the commission of the assault.  Tex.
Penal Code Ann. ' 22.01(a)(1) (Vernon 1994 &
Supp. 2002); Tex. Penal Code Ann.
' 22.02(a)(2)
(Vernon 1994).  A deadly weapon, in turn,
may be Aanything that in the manner of its
use or intended use is capable of causing death or serious bodily injury.@ 
Tex. Penal Code Ann. ' 1.07(a)(17)(B)
(Vernon 1994).

Under the theory of self-defense, one
may be justified in using force against another and to the degree he reasonably
believes is necessary to protect himself against another.  Tex. Penal Code Ann. ' 9.31 (Vernon 1994 & Supp. 2002).  The issue of self-defense is an issue of fact
to be determined by a jury.  Saxton v. State, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991). 
Where a guilty verdict is returned, there is an implicit rejection of
the self-defense theory.  Id. at 914. 
The question, then, is whether a rational trier
of fact would have found the elements of aggravated assault beyond a reasonable
doubt while finding against appellant on the issue of self-defense beyond a
reasonable doubt.  See id.

Under a factual sufficiency standard
of review, the evidence is assumed to be legally sufficient and is judged as a
whole.  Clewis v. State, 922
S.W.2d 126, 128, 134 (Tex. Crim. App. 1996).  A verdict will be reversed only if it is
clearly wrong and unjust.  Id. at 129 (adopting the standard of review set forth in Stone
v. State, 823 S.W.2d 375 (Tex. App.--Austin 1992, pet. ref=d, untimely filed)).  It is not enough that the reviewing court
feels that a different result would be more reasonable.  Id. at 135.  If there is even some evidence to support the
verdict, the verdict is usually conclusive. 
The reviewing court=s power is only to prevent manifest injustice.  Id.








We believe that, here, the evidence
was factually sufficient to support the verdict.  Both appellant and Harris gave their
renditions of the events.  Although
appellant contended that he had hit Harris only after she attacked him and that
he had struck her only in self-defense, Harris gave testimony that appellant
had hit her first and that she had not provoked the attack.

There was also evidence corroborating
Harris=s rendition of the events.  Lynn Glasscock, a nurse who examined Harris
the morning after the incident, indicated that Harris=s bruises were Afresh.@ 
She stated that the injuries Harris sustained were consistent with the
narrative she had given of what occurred. 
Officer Kay Therwanger, a detective with the
Midland Police Department, stated that in her opinion, the injuries were Afresh@ and that Harris=s version of the events was
corroborated by evidence found at appellant=s residence.  Officer Therwanger
testified that the flashlight Harris claimed had been used was found at
appellant=s residence, and she testified that
the cut on top of Harris=s head was consistent with being hit by a flashlight.

There was no question that Harris
suffered bodily injury.  There was a
great deal of testimony regarding Harris=s physical condition on the morning
in question.  There was blood on the
front of Harris=s head and one of her eyes was swollen and bloodshot.  She had an abrasion and a knot on her
forehead on the right and a cut on the top of her head toward the back.  Her ring finger was bruised and she had some
scrapes or red marks on her shoulder. 
There were abrasions on her back, and she had several cuts and abrasions
on her hands.  Furthermore, Harris had a
bite mark on her left arm.








Harris=s injuries resulted in part from
appellant=s use of the flashlight.  During the State=s examination of Karen Hare, an
identification specialist with the Midland Police, Hare was asked whether the
flashlight would have fit within the definition of a deadly weapon.  She testified that it did.

What lay at issue was who had begun
the altercation--that is, whether appellant had acted in self-defense.  If he had, the question remained whether he
used only such force as was necessary.

The jury saw photos of Harris=s injuries, and a medical report
showing her numerous injuries was introduced into evidence.  Appellant admitted that he had hit Harris and
bit her arm.  Yet, appellant testified
that he had not realized that the injuries were severe.

Appellant, in turn, sustained two
stab wounds.  The jury saw photos of
appellant=s injuries as well.  According to testimony at trial, appellant=s injuries were minor or Asuperficial.@ 
His injuries were described as scrapes or small wounds.  Appellant did not appear to be in pain, he did
not tell any of the testifying officers that he was in pain, nor did he require
medical attention.

The jury was shown photos of bloody
bedding and blood spatters found in the bunker. 
Hare testified that the blood spatters probably were not from appellant=s wounds, partly because his wounds
were not severe enough to have caused the spatters.[2]








Additionally, there was some evidence
that appellant had perpetrated violence against Harris during their previous
relationship.  For example, Harris
testified that on one occasion, appellant had entered the kitchen where she was
cooking.  He attempted to stab her with a
knife, so she had thrown hot grease on him. 
Afterward, she ran out the door and appellant ran after her.  He caught Harris and began hitting her in the
stomach with his fist.  In that case,
appellant was the initial aggressor.

In fact, in all previous cases in
which appellant had abused Harris, Harris testified appellant had been the
initial aggressor.  Harris had gone to
the battered women=s shelter several times.

Appellant=s testimony regarding the various
incidents lay in contrast to Harris=s. 
Appellant argued that he had never been convicted of any of the
purported crimes and that he had only been arrested once in relation to any of
the claims of past violence.  But, he
also acknowledged that he and Harris had a volatile relationship and that she
had called for aid several times.

Appellant claims that A[a] neutral review of the evidence .
. . presents the reviewer with what could be characterized as a >swearing match=.@ 
We agree that there is conflicting evidence in this case, but we believe
there is evidence to support the jury=s verdict.  Based on all this, we find the jury=s rejection of appellant=s self-defense claim was not against
the great weight and preponderance of the evidence.








Moreover, appellant=s own
statements about his encounter with Harris were inconsistent.  During Officer Therwanger=s initial questioning of appellant
after the incident, she asked how Harris had received the cut on the back of
her head.  Appellant responded, AMaybe sometimes I didn=t know my strength.  I did not hit with no object.  I=m gonna
tell you the truth.  Run the lab test and
everything.  I=ll be vindicated.@ 
He then suggested that she might have gotten the cut when he threw her
against a patio chair.  On direct
examination, appellant testified that perhaps he had used a weapon, the
flashlight, against Harris.  On cross,
however, he testified that he had not beaten Harris with a flashlight.

The jury also heard appellant=s first statement after the incident
in which he stated that after the fight, he had told Harris to lay down and that they should go to sleep.  In appellant=s first statement after his arrest,
he stated that he told Harris to go away and that he went to sleep.  At trial, he again asserted that he told her
to lay down and that the two went to sleep.

Each side emphasized the
inconsistencies in the other=s recollections of events. 
Yet, we are mindful that the jury is the ultimate fact finder in this
case.  It was within the jury=s discretion to determine the
relative credibilities of appellant and Harris.  As we stated in Taylor v. State, 921
S.W.2d 740 (Tex. App.--El Paso 1996, no pet.):

In
conducting a factual sufficiency review, the reviewing court cannot substitute
its conclusions for those of the jury. 
It is not within the province of this Court to interfere with the jury=s resolution of conflicts in the evidence or to pass
on the weight or credibility of the witness=s
testimony. Where there is conflicting evidence, the jury=s verdict on such matters is generally regarded as
conclusive.








Id. at 746 (citations omitted). 
Our function is only to prevent manifest injustice.  Clewis, 922 S.W.2d at 135.

We cannot agree that the guilty
verdict on the aggravated assault charge was clearly wrong and unjust.  We are unpersuaded
by the evidence appellant points to supporting his factual insufficiency
claim.  We overrule appellant=s first point.

Charge Error

Next, appellant argues that the trial
court erred in refusing his requested language in the court=s instruction on extraneous
offenses.  Specifically, section 8 of the
charge to the jury stated:

In
reference to evidence, if any, that the defendant previously participated in
transactions or acts, other than the one charged in the indictment in this
case, you are instructed that you cannot consider such other transactions or
acts, if any, for any purpose unless you find and believe beyond a reasonable
doubt that the defendant participated in such transactions or committed such
acts, if any; and even then you may only consider the same for the purpose of
determining intent, or knowledge, or motive, or common plan or scheme, if it
does, and for no other purpose.

 

At trial, counsel for appellant requested a modification to
the paragraph stating that A>evidence of other crimes, wrongs, or
acts by the defendant, if any, cannot be used to prove the character of the
defendant, or to show that he acted in conformity therewith.=@ 
The court denied the request.








Appellant does not argue that the
evidence of prior acts of violence was inadmissible.  Nor does he argue that the evidence was
unfairly prejudicial.  Rather, appellant
complains that the court=s instruction regarding the evidence unnecessarily confused
the jury and was not sufficient to prevent the jury from considering the other
acts of physical violence for purposes of character conformity.

We disagree.  The court=s charge to the jury makes clear what
evidence of extraneous offenses might be used for--and it is clear that the
evidence could not be considered for any other purpose than those listed.  Appellant concedes as much.

The court=s instruction to the jury disallowed
use of the evidence in consideration of action in conformity therewith.  The instruction was compliant with the Rules
of Evidence.  See Tex. R. Evid.
404(a). 
Appellant=s proposed instruction would merely have been repetitive of
the existing charge, and a defendant is not entitled to instructions that are
repetitive of others submitted by the court, Peck v. State, 923 S.W.2d
839, 843 (Tex. App.--Tyler 1996, no pet.).

Neither do we believe that appellant
has shown harm for which we must reverse. 
See Tex. R. App. P.
44.2; Almanza v. State, 686 S.W.2d 157,
171 (Tex. Crim. App. 1984) (holding that error that
has been properly preserved by objection will call for reversal as long as the
error is not harmless).  We cannot see
and appellant does not show us how the verdict would have been different had
the court included the instruction in the charge.  Without specifying the harm he has received,
appellant seems merely to argue that he suffered some harm and that any amount
of harm would warrant reversal.








Then, appellant asserts that Athere are other errors in the jury=s charge.@ 
He asserts that there was no specific statement that the burden of proof
rested entirely on the State to prove its theory of the case.  He complains that the charge failed to require
the jury to determine that the flashlight was a deadly weapon but instead
allowed the jury to assume that the flashlight was a deadly weapon per se.  And finally, he alleges that the evidence on
contested issues was Abasically a swearing match.@








We first note that as to the deadly
weapon finding, the court was not required to instruct the jury to determine
whether the flashlight was a deadly weapon; the indictment specifically pleaded
that the flashlight was a deadly weapon and the jury was given the definition
of a deadly weapon in its charge. 
Therefore, the jury was still required to determine if the flashlight
was a deadly weapon and was appropriately instructed.  See Hawkins v. State, 605 S.W.2d 586,
589 (Tex. Crim. App. 1980) (holding that where
indictment alleged that knife was used as a deadly weapon, the jury was
instructed regarding the definition of a deadly weapon, and conviction was
authorized provided the jury found that the appellant had used a deadly
weapon--namely, a knife--the jury was specifically instructed that the evidence
must prove the knife was a deadly weapon as defined before the appellant could
be convicted); see also Davis v. State, 897 S.W.2d 791, 793 (Tex. Crim. App. 1995) (holding that there may be a deadly weapon
finding in a jury trial where the jury finds guilt as alleged in the indictment
and the deadly weapon has been specifically pleaded as such using Adeadly weapon@ nomenclature in the indictment); Polk
v. State, 693 S.W.2d 391, 396 (Tex. Crim. App.
1985) (holding that where a jury finds a defendant guilty as alleged in the
indictment and the indictment alleges the use of a deadly weapon there is
effectively an affirmative finding of the use of a deadly weapon).

We decline further discussion of
appellant=s final, multiple contentions.  After discussing appellant=s point regarding the jury
instruction discussed above, the court asked, AAnything else?@ 
Counsel for appellant replied, ANo, sir.@ 
Therefore, appellant failed to preserve any charge error except for his
objection against the extraneous offense instruction and we need not discuss
these other assertions.  See Tex. Code Crim. Proc. Ann. art.
36.19 (Vernon 1981); Tex. Code Crim.
Proc. Ann. art. 36.14 (Vernon 1981 & Supp. 2002).

We overrule appellant=s second point.

Ineffective Assistance of Counsel

In the last two points, appellant
argues that he received ineffective assistance of counsel in the preparation of
the cause for trial and at trial.








Under an ineffective assistance of
counsel claim, an appellant must allege with specificity the acts or omissions
alleged to not have been the result of reasonable professional judgment.  The acts are then examined under the
two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  Hernandez v. State, 726 S.W.2d 53, 54, 57
(Tex. Crim. App. 1986) (adopting the tests of Strickland).  It is appellant=s burden to establish that counsel=s performance fell below an objective
standard of reasonableness and that it is reasonably probable that the
proceeding would have resulted otherwise but for counsel=s performance, Mallett
v. State, 65 S.W.3d 59, 62-63 (Tex. Crim. App.
2001) (citing Strickland), and this must be proved by a preponderance of
the evidence, McFarland v. State, 845 S.W.2d 824, 842 (Tex. Crim. App. 1992).  As
the Court of Criminal Appeals noted in Ex parte Varelas, 45 S.W.3d 627 (Tex. Crim.
App. 2001):

>It is
not enough for the [applicant] to show that the errors had some conceivable
effect on the outcome of the proceeding.=  Rather, applicant must show there is a
reasonable probability that the result of the proceeding would have been
different but for the errors made by counsel. 
>A reasonable probability is a probability sufficient
to undermine confidence in the outcome.=

 

Id. at 629 (citing Strickland).

Review of counsel=s representation is highly
deferential.  Mallett,
65 S.W.3d at 63. 
Challenged conduct will not constitute deficient performance unless it
was so outrageous that another, competent attorney would not have engaged in
it.  Garcia v. State,
57 S.W.3d 436, 440 (Tex. Crim. App. 2001).  In the absence of evidence of counsel=s reasoning for the conduct, we
assume the existence of a strategic motivation if any may be imagined.  Id. at 440.

Pretrial








Under the third point, appellant
argues that his trial counsel failed to utilize the voluminous records of
Harris=s mental treatment or to make
adequate investigation.  As the court
stated in Rodd v. State, 886 S.W.2d 381
(Tex. App.--Houston [1st Dist.] 1994, pet. ref=d), A[A]n attorney is ineffective if the
failure to seek out and interview potential witnesses precludes the accused
from advancing a viable defense.@ 
Id. at 384.

We do not believe appellant was
precluded from advancing his defense. 
Appellant claimed that he acted in self-defense and attempted to
discredit Harris.  In addition to these
attempts, evidence of Harris=s problems with drugs and alcohol was presented at trial by
both appellant and the State.  There was
also evidence of Harris=s mental problems.  At
one time, Harris had suffered from hearing voices.  Harris admitted that she had been treated
for, among other things, memory lapse. 
She had been diagnosed as being schizophrenic and was put on anti-psychotic
medication, which she was no longer taking at the time of the incident.  She was questioned about her depression and a
doctor=s reference to her as a poor
historian.








In support of Point Three, appellant
also asserts that his counsel=s failure to file pretrial motions is Aindicative of the lack of preparation@ of counsel.  Appellant acknowledges that counsel filed a
motion for speedy trial, but he asserts that counsel Adid not even file a sworn application
for community supervision although appellant had not been previously convicted
of any felony offenses, and might have been eligible for probation under a
lesser included offense theory.@  Appellant=s challenge regarding counsel=s failure to file an application for
community supervision fails under the first prong of Strickland, see
Martinez v. State, 824 S.W.2d 688, 690 (Tex. App.--El Paso 1992, pet. ref=d) (AIt is important to note, however,
that the mere failure of counsel to file appropriate pretrial motions shall not
be categorically deemed as ineffective assistance.@); Jaile
v. State, 836 S.W.2d 680, 687 (Tex. App.--El Paso 1992, no pet.) (citing Martinez). 
It undoubtedly fails under the second prong as well, since appellant was
found guilty of aggravated assault, for which he was ineligible to receive
community supervision,[3]
Tex. Code Crim. Proc. Ann. art.
42.12, ' 3g(a)(2)
(Vernon Supp. 2002).

Appellant does not assert any other
motions that should have been filed or how he was prejudiced.  We are unpersuaded
by the evidence he brings in support of his third point and, accordingly, overrule
it.

At Trial

In his fourth point, appellant cites
several examples of his counsel=s ineffective assistance. 
We disagree with each.

a. 
Failure to preserve complaint to factual sufficiency








Appellant begins by asserting that
his trial counsel rendered ineffective assistance because counsel failed to
preserve any complaint of factual sufficiency in a properly worded motion for
instructed verdict or in a properly worded motion for new trial.  We note that this assertion is contrary to
one appellant makes in his first point:  AAppellant filed a motion for new
trial which states that the verdict is contrary to the law and evidence in the
cause.  Appellant argues that this
language in the motion for new trial put the Court on motion [sic] of a factual
insufficiency claim.@  Indeed, appellant=s trial counsel did file a motion on
such grounds.  More importantly, we
reiterate our statement in Chesnut v. State,
959 S.W.2d 308 (Tex. App.--El Paso 1997, no pet.), A[M]otion
for new trial is not a prerequisite to preserving a factual sufficiency
complaint in criminal cases.  Factual
insufficiency claims may be raised for the first time on appeal.@ 
Id. at 311.  Accordingly, we also disagree with appellant=s claim that trial counsel rendered
ineffective assistance of counsel by failing to preserve any complaint to
factual insufficiency in a properly worded motion for instructed verdict.  A motion for instructed verdict implicates a
legal sufficiency complaint, not a factual sufficiency complaint.

Moreover, although counsel made a
motion for instructed verdict on the aggravated sexual assault count and not
the aggravated assault count, we do not believe his performance was
deficient.  To the contrary, trial counsel=s efforts resulted in a deadlocked
jury on the aggravated sexual assault claim, suggesting that his efforts were
effective.

b. 
Failure to urge motion for speedy trial

Appellant contends that trial counsel=s failure to urge the motion for
speedy trial earlier than he did exemplifies his ineffective assistance.  He cites Barker v. Wingo,
407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972),
for the proposition that his lengthy pretrial incarceration led to obvious
harm.








Appellant seems to confuse the harm
that Barker seeks to prevent with the harm that must be shown under Strickland.  Even if appellant could show he was harmed by
the incarceration, he does not show how the outcome at trial would have been
different if the motion had been made earlier.

c. 
Failure to preserve complaints regarding the State=s improper jury argument

Appellant argues that the State made
improper argument, but counsel did not ask the court for an instruction to
disregard the comment or request that a mistrial be granted.[4]  During the State=s closing argument, it stated:  AIn that on page ten talking about the
self-defense, it says that if you further find from the evidence beyond a
reasonable doubt that at the time and place in question the victim was not
using or attempting to use unlawful force on the defendant, and that the
defendant did not reasonably believe that deadly force, when and to the degree
used, if it was, was immediately necessary to protect himself, then you will
find against the defendant on his plea of self-defense, and certainly that is
just thrown in here to try to get you to become confused and acquit.@ 
Trial counsel objected to the last portion of the statement, to which
counsel for the State replied, ALet me rephrase that, your honor.  I will withdraw that and rephrase it.  I will ask you not to let that confuse you as
you go back to deliberate on what really happened on the night in question.@








Although counsel objected to the
improper argument, he allowed the State to rephrase what had been said and
failed to request that the jury be instructed to disregard the comment and
request that a mistrial be granted. 
Thus, appellant argues, trial counsel failed to preserve the matter for
our review.

Error in admitting improper testimony
generally may be cured by a withdrawal of the testimony and an instruction to
disregard, except in extreme cases where the evidence is clearly calculated to
inflame the minds of the jury and is of such character as to suggest the
impossibility of withdrawing the impression produced on their minds.  Wheeler v. State, 413 S.W.2d 705, 707
(Tex. Crim. App. 1967); see also Laca v. State, 893 S.W.2d 171, 184, 185 (Tex. App.--El Paso
1995, pet. ref=d). 
On review, we must examine the argument in light of the entire record
and the probable impact of the statement on the minds of the jurors must be
considered.  See Orona
v. State, 791 S.W.2d 125, 130 (Tex. Crim. App.
1990); Harris v. State, 790 S.W.2d 568, 585-87 (Tex. Crim.
App. 1989).








We first note counsel=s effectiveness in objecting to the
statement, thereby causing the State to withdraw it.  Next, as we discussed in Point One, there was
factually and legally sufficient evidence to support the jury=s finding of appellant=s guilt.  There was testimony weighing against
appellant=s claim of self-defense and there
were photos of the respective injuries that Harris and appellant both
sustained.  The State emphasized this
evidence and argued that there was no reasonable doubt that appellant had acted
in self-defense.  In closing, the State
contrasted appellant=s contention with appellant=s testimony that after he took Harris=s knife away from her, they both lay
down to sleep.  The State argued that
there was no need for appellant to use deadly force against Harris.

Although the State=s comment during closing argument was
withdrawn, no instruction to disregard was made; no motion for mistrial
made.  Notwithstanding, we do not believe
that appellant has shown a reasonable possibility that the statement
contributed to the conviction. 
Accordingly, the error was harmless.

d. 
Failure to address the treatment of the flashlight as a per se deadly weapon in
the charge

Appellant believes that he was harmed
by his trial counsel=s failure to object to the charge, claiming the charge
treated the flashlight as a deadly weapon per se.  But, as we discussed in Point Two, the charge
was appropriate and required the State to show that the flashlight was a deadly
weapon.

e. 
Failure to object to the charge for failing to state the State=s burden of proof

Appellant complains of trial counsel=s failure to object to the charge
because the charge did not specifically state that the burden of proof rested
entirely with the State.








The State=s responsibility was emphasized
during opening and in closing.  During
its opening statement, appellant=s counsel said to the jury:  AYou will hear all of this
evidence.  You will have to judge the
credibility of the witnesses and you will have to judge whether or not the
State has proven its case beyond a reasonable doubt . . . .@ 
In closing, the State said, ALet=s look at our burden of proof in this
case.  Beyond a
reasonable doubt.@  And the burden was
emphasized numerous other times.  Finally,
the verdict form signed by the jury finding appellant guilty stated:  AWe, the jury, find beyond a
reasonable doubt that the defendant, JERRY DEAN JACKSON, is guilty of the
felony offense of AGGRAVATED ASSAULT as charged in the indictment.@

The State=s burden is also obvious throughout
the charge.  The aggravated assault
charge stated that the jury would find appellant guilty if it believed he had
committed the aggravated assault Afrom the evidence beyond a reasonable
doubt.@ 
Regarding the issue of self-defense, the charge stated:  AYou are further instructed that the
burden is on the State to prove beyond a reasonable doubt that the conduct of
the defendant, if any, was not justified by the law of self-defense.@ 
The charge instructed that if the jury had a reasonable doubt thereof or
had a reasonable doubt that appellant was acting in self-defense, it would find
appellant not guilty.

f. 
Failure to object to the State=s testimony concerning his injuries

Appellant points to counsel=s failure to object to the State=s testimony concerning the
seriousness of appellant=s injuries.  Specifically, he
argues that trial counsel should have objected that Hare lacked sufficient
expert knowledge to testify as to whether a wound was superficial.

At trial, Hare presented testimony
that appellant=s injuries were superficial, and
photos of appellant=s stab wounds were presented in conjunction with her
testimony.  Opinion testimony rationally
based on the perception of a witness is admissible from any witness.  See Tex.
R. Evid. 701. 
Therefore, Hare=s testimony was admissible as such.








In summary, we do not believe these
examples are sufficient to show that appellant received ineffective
assistance.  Appellant had no right to
perfect counsel.  See Estrada v. State,
882 S.W.2d 21, 22 (Tex. App.--El Paso 1994, no pet.) (holding that the accused is not entitled to errorless or
perfect counsel but that the purpose of the guarantee of effective assistance
of counsel is to ensure the accused receives a fair trial).  An ineffective assistance claim is
established by a review of the totality of representation and not through
isolated events.  Smith v. State,
676 S.W.2d 379, 385 (Tex. Crim. App. 1984); see
also Calderon v. State, 950 S.W.2d 121, 128 (Tex. App.--El Paso 1997, no
pet.) (A[I]solated
lapses or mistakes during the trial are not necessarily indicative of
ineffectiveness.@).  Appellant=s trial counsel repeatedly attempted
to discredit Harris, including through questions regarding her mental
problems.  He brought out inconsistencies
in Harris=s recollections, and he countered
with the consistencies in appellant=s stories.  Counsel provided an alternative theory,
favorable to his client, of the chronology of the events.  So, based on the totality of the
representation, we believe that appellant received effective assistance.

We overrule appellant=s fourth point.








Conclusion

We affirm the judgment of the trial
court.

 

                                                                        


SUSAN
LARSEN, Justice

August 15, 2002

 

Before Panel No. 1

Larsen, McClure, and Chew,
JJ.

 

(Do Not Publish)

 











[1]There
was also testimony regarding sexual relations between the two.  Because, as we discuss infra, a
mistrial was declared on the aggravated sexual assault count, we do not
consider evidence bearing upon that count.





[2]Hare
admitted, however, that one of appellant=s
injuries might have bled and he might have been a depositor of blood.





[3]During
the punishment phase of trial, appellant=s
counsel argued to the court that shock probation would be appropriate.  The State countered that appellant was
ineligible for probation and that there was a need to protect the community from
appellant.  The State argued that the
range of punishment possible for appellant was two to twenty years and asked
for a Asubstantial@ prison term for appellant.

The State argues
that the fact that appellant could have been sentenced to twenty years but
received only ten supports the idea that appellant=s
counsel was effective.  We agree.





[4]Appellant
alleges the statement was made during the State=s
opening argument, but we understand appellant to refer to the State=s comments during closing arguments.