COURT OF
APPEALS

                                                    EIGHTH DISTRICT
OF TEXAS

                                                               EL
PASO, TEXAS

 

                                                                              )     

CHARLES
CAMPBELL,                                      )                    No. 
08-01-00357-CR

                                                                              )

Appellant,                          )                             Appeal from

                                                                              )     

v.                                                                           )                       168th District Court

                                                                              )

THE STATE OF TEXAS,                                     )                 of El Paso County, Texas

                                                                              )

Appellee.                           )                      (TC#
20000D03794)

 

O
P I N I O N

 

Charles
Campbell was charged with possession of more than 50 but less than 2,000 pounds
of marijuana.  A jury found him guilty
and the court assessed punishment at ten years to be served in the
Institutional Division of the Texas Department of Criminal Justice.  At issue in this appeal is whether the
evidence was legally and factually insufficient to show that Appellant
intentionally and knowingly possessed marijuana.  We affirm.

FACTUAL SUMMARY








Detective
Louis Serrano and Officer Hope Gomez both worked for the Astash house unit@
of the El Paso Police Department.[1]  On July 10, 2000, at about 11:30 a.m.,
Officer Gomez began surveillance on a home located at 2072 Pueblo Nuevo Circle
in El Paso, Texas after police received an anonymous tip of possible narcotics
trafficking.  Gomez watched the premises
from an unmarked pickup truck down the street from the house.  Backed into the carport on the side of the
house was a yellow Ryder rental truck. 
Parked directly in front of the Ryder was a large red Adually@
pickup truck which had also been backed into the driveway so that it was facing
the street.  Directly behind the Ryder
was a detached garage which Appellant used as an office.  








Other
officers were nearby and an unmarked police vehicle was parked in the front of
the house.  The surveillance team
observed Appellant walking between the back of the
Ryder truck and the side door of the house some three or four times.  Officer Gomez and Detective Serrano were
assigned to perform a Aknock-and-talk@ to see if Appellant would consent to a
search of the house.  They were met by
Appellant at the door.  Both officers
were wearing plain clothes, did not have their weapons visible, flashed their
badges and identified themselves as officers. 
Appellant was calm and cooperative; he invited the officers to come in
but asked them to wait a minute since he was on the telephone.  When Appellant returned, the officers
explained that they had been notified that drugs were possibly being stored at
the residence.  Officer Gomez noticed
another man watching television in a room to the left of the dinette.  This individual, Leroy Robinson, was a truck
driver for Appellant=s
company who was laying over between runs and staying at Appellant=s home as a guest.            Appellant
told the officers that he owned the home and that they could search it because
there were no drugs there.  When the
officers told him that the search would go more quickly if the K-9 unit were
used, Appellant consented to a K-9 sweep for narcotics detection.  The K-9 unit alerted to the Ryder truck in
the driveway.  The officers asked
Appellant if the truck belonged to him or if he had rented it.  Appellant explained that the day before, a
friend had asked permission to leave the truck at the house because he could
not park it in the apartment complex where he lived.  Because the friend is identified in the
record as either Devon Johnson or Devon Harrison, we will simply refer to him
as ADevon.@  After explaining that the truck was not his,
Appellant offered police the keys which had been laying
on an island counter in the kitchen.

Inside
the truck, officers found ten moving boxes. 
Ironically, the boxes were printed with the slogan, ASay no to drugs.@  One of the boxes was open and the officers
looked inside to discover numerous bundles of marijuana.  Officers later determined that there were
over 979 pounds of marijuana in 603 individual bundles with a street value in
the neighborhood of $295,000.  An invoice
found inside the cab indicated that Alvaro Acosta had rented the vehicle.  Officers ultimately discovered that Acosta
had rented the truck for Aa
friend.@  The Afriend@ was not identified at trial and
Appellant denied discussing the rental with Acosta.  Police were not able to link Acosta to the
marijuana.

After
finding the marijuana, the officers conducted a full search.  Inside the detached garage, they found
several boxes and packaging tape similar but not identical to that found in the
truck.  Officers also found a receipt
from Rhino Self Storage dated July 8, 2000, reflecting the purchase of ten
extra large boxes and three rolls of tape. 
Inside the house, the officers found a water bill, a Homecomings
Financial Network mailing, a deposit stub from Bank of America, and a Dish
Network receipt, all bearing Appellant=s
name and address.    The dually was
registered to Appellant in the state of Florida.  








While
searching the master bedroom, officers came across separate stashes of
cash.  A blue plastic bag inside the
armoire contained $3,440.  The dresser
drawers contained another $2,380.  A
Federal Express envelope outside the front door held $2,520 in cash and was
addressed to a person in Miami who was affiliated with Mayflower, a common
carrier transportation company.  The
total amount of  cash
discovered at the residence was $8,340. 
The officers later hid the money that had been discovered in the dresser
drawers to see if the K-9 unit could detect the presence of narcotics.  When the drug dog was brought inside to
search the house, he alerted to the residual odor of drugs on the money.  

Appellant
told authorities he was self-employed. 
He had been in the moving transportation business since 1979.  His business, Savior Transportation, was
incorporated in the state of Florida and Appellant had lived in Florida until
1999 when he moved to El Paso.  At the time
of his arrest, the business was operating four or five 18-wheeler
tractor-trailer rigs.  On the morning of
July 10, Appellant was in Juarez with his girlfriend and when he returned to
his home, he found the Ryder truck parked in the driveway as he had instructed
Devon to do.  Appellant testified that he
had met Devon through a maintenance man at an apartment complex who had become
a friend and often referred him customers in need of moving services.  Appellant and Devon had met on three or four
different occasions to work out the details for Appellant to move Devon from
the apartment complex in El Paso to Washington, D.C.  During these visits, Devon became acquainted
with Leroy Robinson.    The police later
contacted Devon.  He mentioned that he
was trying to get a job with Appellant as a truck driver.  Devon denied driving the Ryder truck to
Appellant=s
house.  However, one of the drug dogs
alerted to marijuana inside Devon=s
apartment.  








Appellant
claimed he never looked in the back of the truck nor did he know that there was
marijuana inside.  While he normally
takes inventory of everything that he transports, that day he was unable to
inspect the cargo since he had just returned from Juarez.  Appellant usually keeps large amounts of
currency in his house at all times so he can supply his truck drivers with
money to pay for fuel and emergencies. 
The Federal Express package contained cash because he was Atoo lazy@
to get a money order.  He also denied
going back and forth between his house and the truck repeatedly when the police
were conducting surveillance, and he never opened the cargo door.  He said that the police could not see him as
he passed behind the truck, and that he was actually working on some lawn
equipment near the garage.[2]  

Detective
Serrano testified concerning his experience with drug trafficking between El
Paso 

and Florida.  The
common form of transportation is 18-wheelers and customarily, the traffickers
utilize a legitimate business as a front for moving money.

SUFFICIENCY OF THE EVIDENCE

In
his sole point of error, Appellant challenges the legal and factual sufficiency
of the evidence to support his conviction. 
More specifically, he argues that the evidence does not affirmatively
link him to the marijuana found in the Ryder rental.

Possession of a Controlled Substance








Unlawful
possession of a controlled substance contains two elements.  The State must prove that the accused:  (1) exercised care, control, and management
over the contraband, and (2) knew the substance was contraband.  See Martin v. State, 753 S.W.2d 384, 386
(Tex.Crim.App. 1988); Levario
v. State, 964 S.W.2d 290, 294 (Tex.App.‑‑El
Paso 1997, no pet.).  When the contraband
is not found on the accused=s
person or it is not in the exclusive possession of the accused, additional
facts and circumstances must link the accused to the contraband.  Id. 
An affirmative link must be established between the accused and the
contraband demonstrating both that the accused had control over it and that the
accused had knowledge of its existence and character.  See Brown v. State, 911 S.W.2d 744 (Tex.Crim.App. 1995); Levario,
964 S.W.2d at 294.  This Aaffirmative link@
may be shown by either direct or circumstantial evidence, and Ait must establish, to the requisite
level of confidence, that the accused=s
connection with the drug was more than just fortuitous.@   Brown, 911 S.W.2d
at 747; Levario, 964 S.W.2d at
294.  Courts have looked to various
factors in determining the existence of an affirmative link, including: (1) the
place where the contraband was found was enclosed; (2) the contraband was
conveniently accessible to the accused; (3) the accused was the owner of the
place where the contraband was found; (4) the quantity of the drugs found; (5)
the accused possessed a key to the locked location of the drugs; (6) a tip by
an informant that the accused was in possession of the contraband; (7) the
accused was in close proximity to a large quantity of contraband; and (8) drug
paraphernalia was found on or in plain view of the accused.  See Washington v. State,
902 S.W.2d 649, 652 (Tex.App.‑‑Houston
[14th Dist.] 1995, pet ref=d);
Villegas v. State, 871 S.W.2d 894, 897 (Tex.App.--Houston
[1st Dist.] 1994, pet. ref=d);
Edwards v. State, 813 S.W.2d 572, 575 (Tex.App.‑‑Dallas
1991, pet. ref=d).  Certain of these factors may bear on the
care, custody, control, or management element of the offense, while others may
bear on knowledge, and yet others may be relevant to both elements.  Whitworth v. State,
808 S.W.2d 566, 569 (Tex.App.‑‑Austin
1991, pet. ref=d).  The number of factors present is of less
import than the logical force the factors have, alone or in combination, in
establishing the elements of the offense. 
Whitworth, 808 S.W.2d at 569.

Legal Sufficiency








In
reviewing the legal sufficiency of the evidence to support a criminal
conviction, we must review all the evidence, both State and defense, in the
light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 318‑19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); Geesa v. State, 820 S.W.2d 154, 159 (Tex.Crim.App. 1991). 
We do not resolve any conflict of fact or assign credibility to the
witnesses, as it was the function of the trier of
fact to do so.  See Adelman v. State, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); Matson v. State, 819 S.W.2d
839, 843 (Tex.Crim.App. 1991).  Instead, our duty is only to determine if
both the explicit and implicit findings of the trier
of fact are rational by viewing all of the evidence admitted at trial in a
light most favorable to the verdict.  Adelman, 828 S.W.2d at 422.  In so doing, any inconsistencies in the
evidence are resolved in favor of the verdict. 
Matson, 819 S.W.2d at 843.   Further, the standard of review is the same
for both direct and circumstantial evidence cases.  Geesa, 820 S.W.2d at 158; Chesnut v.
State, 959 S.W.2d 308, 311 (Tex.App.‑‑El
Paso 1997, no pet.).

Several
of the enumerated factors exist here. Police were tipped by an informant that
Appellant was in possession of the contraband. 
Appellant owned and resided in the home where the Ryder truck was
parked.  The keys to the truck were in
his possession.  Nearly 1,000 pounds of
marijuana were packed into ten moving boxes. 
Similar boxes, packaging tape and packing Apeanuts@ were found in Appellant=s garage/office.  Officers recovered a receipt from Appellant=s garage indicating that ten large
boxes and three rolls of tape had been purchased just two days earlier.  One of the Appellant=s
employees was on the premises and available to drive the load.  The evidence is legally sufficient to
establish that Appellant had knowledge of and control of the marijuana.  Watson v. State, 861 S.W.2d 410, 415‑16
(Tex.App.‑‑Beaumont 1993, pet. ref=d)(although
defendant was not in exclusive possession of motel room where cocaine was
found, evidence established an affirmative link where cocaine was conveniently
accessible to defendant, defendant indicated exercise of control over room by
answering door, cocaine was in enclosed place, cocaine paraphernalia was in
defendant=s view,
and smoke alarm had been manually disconnected).








Factual Sufficiency

When conducting a factual sufficiency review, we consider all of
the evidence, but we do not view it in the light most favorable to the verdict.  Clewis v. State, 922 S.W.2d 126, 129 (Tex.Crim.App.
1996); Levario, 964 S.W.2d at 295.  We review the evidence weighed by the jury
that tends to prove the existence of the elemental fact in dispute and compare
it with the evidence that tends to disprove that fact.  Johnson v. State, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000); Jones v. State, 944 S.W.2d 642,
647 (Tex.Crim.App. 1996), cert. denied, 522
U.S. 832, 118 S.Ct. 100, 139 L.Ed.2d 54 (1997).  A defendant challenging the factual
sufficiency of the evidence may allege that the evidence is so
weak as to be clearly wrong and manifestly unjust, or in a case where the
defendant has offered contrary evidence, he may argue that the finding of guilt
is against the great weight and preponderance of the evidence.  See Johnson, 23
S.W.3d at 11.  Although we are
authorized to set aside the fact finder=s
determination under either of these two circumstances, our review must employ
appropriate deference and should not intrude upon the fact finder=s role as the sole judge of the weight
and credibility given to any evidence presented at trial.  See Johnson, 23
S.W.3d at 7.  We are not free  to reweigh the
evidence and set aside a verdict merely because we feel that a different result
is more reasonable.  Cain
v. State, 958 S.W.2d 404, 407 (Tex.Crim.App.
1997); Clewis, 922 S.W.2d at 135.  








While
there was certainly conflicting testimony as to who drove the truck to
Appellant=s home and
no testimony concerning the identify of the Afriend@ on whose behalf Acosta rented the
truck, Appellant owned the residence where the truck was parked, the keys to
the truck were found inside his house on the kitchen counter, similar--albeit
not identical--packaging materials were found in the garage, and large amounts
of cash were found in the house. 
Appellant offered explanations for the presence of the truck, the boxes
and packaging material, and the cash, all of which related to his operation of
an interstate moving company.  The dog
did not alert to any of the boxes or packing materials in the garage.  Although fingerprints were not lifted from
the truck or the boxes, Appellant had ready access to the truck and was
observed by officers making repeated trips between the house and the cargo end
of the vehicle.  Despite Appellant=s claim that he was working on a
lawnmower in the garage and the officers just could not see him, Officer Gomez
testified that she had a clear shot of the garage door from her surveillance
location and Appellant never went inside. 
Furthermore, the jury may make all reasonable inferences from the
evidence presented.  The operation of the
moving company is not inconsistent with, and could in fact facilitate, the
trafficking of marijuana.  We conclude
that the evidence is not so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust.  See Clewis, 922 S.W.2d at 129. 
Accordingly, we overrule Appellant=s
sole point of error and affirm the judgment of conviction.

 

 

January 23, 2003

                                                               
         

ANN CRAWFORD McCLURE, Justice

 

Before Panel No. 4

Barajas, C.J., Larsen, and
McClure, JJ.

 

(Do Not Publish)











[1]  The stash
house unit is responsible for investigating information relating to houses or
warehouses where large amounts of narcotics are kept.  The unit is federally funded and focuses on
high intensity drug trafficking areas.  





[2]  The officers
did not find a lawnmower or any other tools near the garage when conducting
their search.  Appellant had no sign of
grease on himself or his clothes.