57 S.W.3d 66 (2001)
In the Interest of J.F.C., A.B.C., and M.B.C., Minor Children
No. 10-99-153-CV.
Court of Appeals of Texas, Waco.
July 13, 2001.
*67 Nita Kissel Fanning, Law Office of Nita Fanning, Waco, for appellant.
John W. Segrest, Criminal District Attorney, James Wiley, Assistant Criminal District Attorney, C. Kevin Keathley, Law Office of Kevin Keathley, Waco, for appellee.
Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

OPINION
VANCE, Justice.
Paige Cox, born 1967, and Tawnya Cox, born 1971, were married in 1990. They are the biological parents of the children who are the subject of this case: a daughter J.F.C., born December 15, 1992, and two sons, A.B.C., born November 4, 1994, and M.B.C., born March 8, 1997. Because of a referral to the Texas Department of Protective and Regulatory ServicesChild Protective Services ("CPS") that Tawnya had slapped A.B.C. and left a bruise, CPS investigated the Cox family in 1997 and found what it believed to be sufficient reasons to place the Coxes under supervision. There were no further incidents for the next seven months until another referral of abuse was made, an investigation of which revealed some marks on A.B.C. About ten days later, another referral for abuse could not be substantiated. However, because of the continual discord between Paige and *68 Tawnya, and the overall "emotional health" of the family, CPS removed the children. They have never been returned. Six months later in April 1998, CPS petitioned the court to terminate Paige's and Tawnya's parental rights, primarily because they were not diligently following the court-ordered plan devised by CPS for the return of the children. In February 1999, after a jury trial, their parental rights were terminated.
Paige and Tawnya bring eleven issues on appeal. Among them is a complaint about the court's charge, i.e., a faulty instruction about the requirement that termination be in the best interest of the children. We will sustain this complaint, hold that due process was violated, and reverse for a new trial.

FACTUAL AND PROCEDURAL BACKGROUND
In March 1996, CPS received a referral of possible sexual abuse by Paige of J.F.C. and A.B.C. An investigation revealed no evidence of abuse and no evidence of sexual activity or drug use in the presence of the children.
A year later in early March 1997, M.B.C. was born. In late March, CPS received information that Paige and Tawnya had drug problems, were physically abusive to one another, and may have been physically abusing the children. CPS investigated and found some bruises around A.B.C.'s left eye. From their interviews with Paige and Tawnya, CPS learned that there was some drug use in the home. Paige complained that Tawnya was physically abusive of Paige and had sexual affairs with other men. In addition, Tawnya was bipolar and on medication. CPS concluded a need to place the Cox family under supervision. Removal of the children was ruled out because they were not in immediate danger.
In weekly home visits over the next seven months, no abuse was found. However, CPS was unhappy that Paige and Tawnya were not participating in counseling as instructed and that they continued to have conflicts between themselves. Tawnya did agree to a psychiatric evaluation, from which CPS concluded she was not an immediate threat to the children.
In October 1997, CPS received a referral that Tawnya had handled A.B.C. too roughly when placing him in his car seat. CPS investigated and found some marks and scratches on A.B.C.
About ten days later, a referral was made to CPS of a bruise to A.B.C. CPS workers investigated and found no marks or bruises on any of the children. However, CPS found the children were not attending daycare and determined that "the emotional health of both parents was deteriorating."[1] Furthermore, Paige and Tawnya continued to yell and argue with one another, and they had substantial marital problems and financial hardships. CPS removed the children from the home and the State filed suit for temporary conservatorship.[2]
Two months later in December 1997, a Family Service Plan was filed with the court recommending what Paige and Tawnya should be required to do to get the children back, including but not limited to, a psychiatric evaluation for Tawnya, maintaining employment, attending counseling, and paying child support. The court approved the Plan and ordered Paige and Tawnya to show compliance by May 1, *69 1998, else face the possibility of termination of their parental rights. Over the following months, amendments were made to the Plan, which were also approved by the court.
It was primarily the failure to fully comply with the Plan that led to the State's amending the petition in April 1998 and seeking to terminate parental rights. For example, Paige attended five of eleven therapy appointments, and Tawnya attended six of thirteen therapy appointments. Both were dropped from treatment by the therapist. Anger management and parenting classes were not attended. Child support was not paid. Urinalysis-test appointments were missed. Paige and Tawnya were evicted from their home. They told their CPS case worker they did not want to comply with the Plan. They resented it and did not find its requirements useful. Tawnya did not think CPS would ever return the children. Eventually, Paige and Tawnya moved to Austin to "get a new start." A fourth child, S.H.C., was born on January 19, 1999.[3]
Conflicts between CPS and Paige and Tawnya continued, and the requirements of the Plan were not met. At a jury trial in February 1999, there was evidence of the discord between Paige and Tawnya in the home, their violent tendencies toward each other, and their loud arguments in front of the children. The incidents in which CPS investigated abuse were testified to. A psychologist and a therapist testified against the continuation of the parent-child relationship. Paige and Tawnya also admitted using small amounts of drugs, although not in the children's presence. They did not use alcohol. Both testified they did not fully comply with the Plan for a variety of reasons having much to do with dislike and mistrust of CPS. They denied many of the State's accusations, while admitting others. At one point this exchange occurred between the State's counsel and Paige:
Q: ... Do you take any responsibility for your children being removed from your home or the situation you're in, or is it everybody else's fault?
A: I'm going to be honest with you, that I'm not a perfect parent and I'm not a perfect man, but by the grace of God, see, I give account to a higher authority, not to CPS, not to the courts, not to McLennan County, not to Travis County. I give an account to God each night before I go to bed about how I handle my children, about how I deal with my wife, and he's a much [higher] standard than any standard you can come up with, so by the grace of God, you know, I have there are certainly areas in my life that I need to better, and that's why, as you said earlier, I compare my life to Christ. That's why as I get closer to Christ in my life and become more Christlike, I find that my life becomes absent of undesirable attitudes....
This exchange occurred with Tawnya:
Q: This is a pretty chaotic relationship, isn't it?
A: After everything we've been through, yes, but thank God since we have been out of the City of Waco and my husband and I have had time to mend our relationship because we want our children back, *70 it has been wonderful, and I praise God for that. I couldn't ask for a better husband or a father.
Based on the jury's answers, the court signed a judgment terminating both parents' rights.
On appeal, Paige and Tawnya bring eleven issues. However, we address only those issues which pertain to the court's charge to the jury.
ISSUES 5, 6, AND 7: THE CHARGE
The jury was instructed as follows, which appeared on page three of the charge:
With regards to TAWNYA LYNN COX, for the parent-child relationship to be terminated in this case, it must be proved by clear and convincing evidence that she has done at least one of the following:
A. Engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;
OR
B. Failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Protective and Regulatory Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.
With regards to PAIGE ALONZO COX, for the parent-child relationship to be terminated in this case, it must be proved by clear and convincing evidence that he has done at least one of the following:
A. Knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children;
OR
B. Failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Protective and Regulatory Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child. For the parent-child relationship to be terminated in this case, it must also be proved by clear and convincing evidence that termination of the parent-child relationship would be in the best interest of the children. [Italics added]
Tex. Fam. Code Ann. § 161.001(1)(D, E, and O), and (2) (Vernon Supp.2001). Then, on page four the instruction was given: "Some factors to consider in determining the best interest of the child are:", followed by a list of nine factors. Holley v. Adams, 544 S.W.2d 367, 372 (Tex.1976). Finally, on pages five and six, in a series of six broad-form questions, the jury was asked to find "yes" or "no" whether the parent-child relationship between each of the two parents and each of the three children should be terminated.
Paige and Tawnya maintain the jury charge was inadequate and violated their constitutional due process, due course of law, and equal protection rights. Specifically, they complain the jury was never asked to make an affirmative finding whether termination would be in the best interest of the children. Only an instruction about that was given. Furthermore, the instruction was placed in the charge in *71 such a way that "best interest" appears to pertain only to Paige, and then only to subpart "B" of the grounds for his termination. In addition, Paige and Tawnya complain that the instructions were that jurors could find for termination if either "A" or "B" was true. That allowed for the possibility of a verdict for termination without at least ten jurors agreeing whether it was "A" or "B" that occurred.
At trial, Paige and Tawnya failed to object to the charge or to request questions and instructions as required by Rules 272, 273, 274, and 278 of the Rules of Civil Procedure. Normally we do not review complaints unless they have been preserved in the trial court. Tex. R. App. P. 33.1. However, we recently recognized in In the Interest of A.P. and I.P., Minor Children, 42 S.W.3d 248 (Tex.App.-Waco, 2001), that there is precedent for reviewing an unpreserved complaint in an involuntary-termination-of-parental-rights case. See In Interest of S.R.M., 601 S.W.2d 766, 769-70 (Tex.Civ.App.-Amarillo 1980, no writ) (parental rights were terminated based on trial evidence of grounds not pled, without objection; case reviewed, and reversed, for insufficient evidence in spite of trial by consent, because of the constitutional dimension of termination cases).
In A.P., we were confronted with an unpreserved sufficiency complaint about the "core issues" at stake in a termination case, i.e., the Section 161.001(1) grounds for termination, and whether termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001 (Vernon Supp.2001). Following a United States Supreme Court directive that proceedings in termination cases must comport with procedural due process, we held that termination of parental rights without appellate review of a sufficiency complaint regarding the "core issues" merely because it was unpreserved was a violation of due process. In addition, we commented on the fact that sufficiency of the evidence in criminal cases, whether legal or factual, does not have to be preserved for appellate review.[4] Because criminal cases and termination cases both involve heightened standards of evidence, i.e., "clear and convincing" in termination cases and "beyond a reasonable doubt" in criminal cases, we thought it a logical extension to review unpreserved sufficiency issues in termination cases. Therefore, because of the due process concern, and as a logical application of the review-rules in criminal cases, after A.P. we review for sufficiency of the evidence to support findings about "core issues" if raised on appeal, even when not preserved below.
In A.P., we noted that the "natural right existing between parents and their children is of constitutional dimensions." Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985) (referencing In re G.M., 596 S.W.2d 846, 846 (Tex.1980)). "[F]reedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment." Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599 (1982); See also Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000) (grandparent's rights case: "[T]he interest of *72 parents in the care, custody, and control of their childrenis perhaps the oldest of the fundamental liberty interests recognized by this Court," (citing Meyer v. Nebraska, 262 U.S. 390, 399, 401, 43 S.Ct. 625, 67 L.Ed. 1042 (1923))). A parent's right to the parent-child relationship is "essential," "a basic civil right of man," and "far more precious than property rights." Holick, 685 S.W.2d at 20 (quoting Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1976)).
Because of the right's elevated status, the quantum of proof required in a termination proceeding is elevated from preponderance of the evidence to clear and convincing evidence. Santosky, 455 U.S. at 747, 102 S.Ct. at 1391. "[S]tate intervention to terminate the relationship between [a parent] and [the] child must be accomplished by procedures meeting the requisites of the Due Process Clause." Id., 455 U.S. at 753, 102 S.Ct. at 1394 (quoting Lassiter v. Department of Social Services, 452 U.S. 18, 37, 101 S.Ct. 2153, 2165, 68 L.Ed.2d 640 (1981) (first dissenting opinion), and at 24-32, 101 S.Ct. at 2158-2162 (opinion of the Court), and at 59-60, 101 S.Ct. at 2176 (STEVENS, J., dissenting)); see also M.L.B. v. S.L. J., 519 U.S. 102, 120, 117 S.Ct. 555, 566, 136 L.Ed.2d 473 (1996) (state statute denying appeal from a termination proceeding because appellant could not afford the cost of the record violated procedural due process and equal protection). Therefore, "termination proceedings should be strictly scrutinized." Holick, 685 S.W.2d at 20.
Just as in A.P., we are not persuaded that application of Rule 33.1 in an involuntary termination-of-parental-rights case to preclude review of a claim of charge error about a "core issue," in this case "best interest of the child," affords the parent due process. To terminate parental rightsa Fourteenth Amendment liberty interestwhen there is a fundamentally erroneous charge on a "core issue," only because the complaint was not preserved in the trial court, does not adhere to Fourteenth Amendment procedural due process. See Santosky, 102 S.Ct. at 1394. There is no "[strict] scrutiny" (quoting Holick) in such an approach. Therefore, because we are constitutionally required to follow the directives of the United States Supreme Court when they differ with state procedural law, we will not apply Rule 33.1. U.S. Const. art. VI ("This Constitution ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby....").
We believe the betterand constitutionalapproach is to review such a charge complaint. Our holding is limited to complaints raised on appeal about "core issues" in the court's charge in an involuntary termination case.[5] We hold that when such a challenge to the charge is made on appeal, and no motion, request, or objection was made at the trial court which would have preserved the complaint for appellate review, we will nevertheless review the complaint. This is an extension of our decision in A. P. for the due-process reasons therein stated.
Our conclusion comports with the requirements in Lassiter. The question of "what process is due" is to be answered by presuming that the procedure in question, i.e., that unpreserved complaints about the charge will not be reviewed on appeal, *73 does not violate due process,[6] and then determining whether that presumption is rebutted by weighing (1) the private interests at stake, (2) the government's interest, and (3) the risk that the procedure will lead to erroneous decisions. Lassiter, 452 U.S. at 27, 101 S.Ct. at 2159. We have already discussed the first element at length. The parent's interest is an extremely important one. As for the second element, the State, which also has an urgent interest in the welfare of the child, shares in the quest for an accurate and just decision. Precluding an appellate court from review of the termination of a parent's rights when the jury was not properly instructed about the "core issues" runs against the State's interest. Furthermore, while there are monetary costs involved in appellate review of an issue we would otherwise not consider, the State's pecuniary interest is hardly significant enough to overcome private interests as important as parents' relationships with their children. The State's interest in the finality of judgments is answered with the same response. Finally, as for the risk that an unreviewed charge error on core issues may result in erroneous decisions, we note that charges in termination cases are currently submitted in broad form. The jury is presented with multiple pages of instructions and definitions. While we may comfort ourselves that juror-citizens largely untrained in the law understand fully what they are being instructed to do, the reality is that erroneous broad-form charges may confuse the jury as easily as inform it. Appellate review is essential to guard against a confusing and improper charge. In conclusion, weighing the Lassiter elements, the presumption is rebutted.

ERROR ANALYSIS
By six broad-form questions the jury was asked: "Should the parent-child relationship between [Paige or Tawnya] and [J.F.C., A.B.C., or M.B.C.] be terminated? Answer `Yes' or `No'." Paige's and Tawnya's issues five, six, and seven raise complaints about the court's charge. The first is that the jury should have been asked to return affirmative findings about whether termination would be in each child's best interest. Their second complaint is that the disjunctive form of the instructions about the grounds for termination was improper because it allowed some jurors to rely on one ground for termination while others relied on another ground, so that the vote of at least ten on the same ground was not required.
Broad-form questions "whenever feasible" are required by Rule 277 of the Rules of Civil Procedure. Tex. R. Civ. P. 277. The cases relied on by Paige and Tawnya state only that termination must be based on both a statutory ground and the best interest of the child, not that the jury must be asked to make an affirmative finding specific to those matters. When the jury is otherwise correctly instructed about the grounds for termination and also about the necessity of termination being in the best interest of the child, the ultimate question to terminate may be in broad form. The Texas Supreme Court explicitly approved of broad-form submissions in termination cases in Texas Department of Human Services v. E.B., 802 S.W.2d 647 (Tex.1990). The form is also recommended by the Pattern Jury Charges. Texas Pattern Jury Charges: Family PJC 218.1B, 218.3B, and 218.3C (1998). As required by Rule 277, "Unless extraordinary circumstances exist, a court must submit *74 such broad-form questions." E.B., 802 S.W.2d at 649. Therefore, the first complaint is overruled.
Disjunctive questions are also approved by Rule 277 of the Rules of Procedure "... when it is apparent from the evidence that one or the other of the conditions or facts inquired about necessarily exists." Paige and Tawnya testified they failed to fully comply with the court order referred to in parts "B" of the charge. In addition, the disjunctive form of the instructions was approved in E.B.: "The controlling question in this case was whether the parent-child relationship between the mother and each of her two children should be terminated, not what specific ground or grounds under § 15.02 [now § 161.001] the jury relied on to answer affirmatively the questions posed." Id. Again, the disjunctive form is also recommended by the Pattern Jury Charges. Texas Pattern Jury Charges: Family PJC 218.3B (1998). Therefore, the second complaint is overruled.
However, the third complaint about this charge is the positioning of the instruction regarding the best interest of the children. By any reasonable reading, the charge does not require the jury to find that the termination of Tawnya's rights was in the best interest of the children. Nor does it require that the termination of Paige's rights be in the best interest of the children except as to ground "B." This constitutes an obvious and fundamental charge error. The charge fails to require all the findings that, under the Family Code, are necessary to terminate parental rights. Tex. Fam. Code Ann. § 161.001(1), (2) (Vernon Supp.2001).

HARM ANALYSIS
Charge error is reviewed for harm by "consider[ing] the pleadings of the parties, the evidence presented at trial, and the charge in its entirety. [Error] will be deemed reversible only if, when viewed in the light of the totality of these circumstances,... it probably [caused] the rendition of an improper judgment." Island Rec. Dev. v. Republic of Texas Sav., 710 S.W.2d 551, 555 (Tex.1986); Tex. R. App. P. 44.1(a)(1).
In its petition, the State properly alleged the statutory grounds for termination regarding both Paige and Tawnya, as well as that termination was in the children's best interest. Therefore, all issues which needed to be joined were.
However, from this charge the jury could very well have terminated Tawnya's rights solely on the basis of either of the two statutory grounds and without finding that termination was in the best interest of the children. The jury simply was never asked to decide if termination of Tawnya's rights was in the best interest of the children. Nothing else in the charge clarifies this blatant mistake. Furthermore, the evidence that termination of Tawnya's rights was in the children's best interest, as it was presented at trial, does not cure the charge error. While the lawyers mentioned the issue of "best interest" a number of times during voir dire, opening statements, and closing arguments, they did not at any length discuss the evidence specifically in relation to the nine Holley v. Adams factors listed on page four of the charge. Also, this evidence, described previously, was not highly persuasive that termination of Tawnya's rights was in the children's best interest. Therefore, considering the pleadings, the entire charge, and the evidence as it was presented about "best interest," we find that this charge error probably did cause rendition of an improper judgment as to Tawnya.
*75 The charge error was less blatant as to Paige, because at least the instruction that termination had to be in the children's best interest was attached to one of the two statutory grounds included in the part of the charge that pertained to him. However, the instruction was not associated with the other ground, leaving the potential for the jury to terminate on the other ground only, without finding that termination was in the children's best interest. This potential is increased by the fact that the ground to which the "best interest" instruction was attached had less support in the evidence. That ground had to do with whether Paige complied with the court-ordered Service Plan. Paige testified he did not fully follow the Service Plan. However, there is a distinction between failing to follow the Plan and "[f]ail[ing] to [comply] with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child," as specifically stated in the charge. We cannot say what jurors decided about that distinction. Therefore, the jury may very well have terminated Paige's rights by finding only that he endangered the children, i.e., the "A" section of the charge, and therefore never finding that termination of his rights was in the best interest of the children. Also, as with Tawnya, none of the lawyers discussed at any length the evidence about "best interest" in relation to the nine Holley v. Adams factors. Therefore, once again, considering the pleadings, the entire charge, and the evidence as it was presented about "best interest," we find that this charge error probably did cause rendition of an improper judgment as to Paige.[7]

CONCLUSION
We reverse the judgment and order of termination as to both Paige and Tawnya, and remand the cause for a new trial.
Justice GRAY dissenting.
GRAY, Justice, dissenting.
The constitutional protection of procedural due process does not require a reversal of the judgment in this case. The charge was not as precise as it could have been. But the parents had a full trial on the merits. They had the opportunity to object to the charge. They did not. The majority's adoption of what is essentially a criminal standard of review for charge error, which is based on a criminal statute, is not required in this civil proceeding.
There is no reason to disregard the ordinary rules of civil procedure and appellate review in this proceeding. Where it is arguable that a finding necessary to the judgment was not submitted to the jury, the finding is normally implied in support of the judgment if the implied finding has evidentiary support in the record. But we need not even rely on an implied finding. The trial court made an express finding in the judgment that termination of the parent/child relationship is in the best interest of the children.
Constitutional protections of the parent/child relationship, primarily procedural *76 due process required to terminate parental rights, are adequately accorded the parents in this proceeding by our "strict scrutiny" of the proceedings to determine if the express findings made by the jury and the court are supported by the record. Because I have determined that those findings are supported by the record, I would not reverse the judgment terminating the parental rights on the basis of charge error. Because the majority significantly departs from existing and well established precedent for review of charge error in civil proceedings and unnecessarily complicates review of termination proceedings by imposition of a criminal statutory requirement as part of minimum procedural due process in the review of unpreserved charge error in a civil proceeding, I respectfully dissent.
In its motion for rehearing the State challenged the majority's analysis and application of reviewing a procedural due process challenge. While the majority opinion has been modified and reissued in an attempt to address the issue raised in the motion for rehearing, the majority has failed to address the question of disposing of this case on a procedural due process issue not briefed by either party.
The State has requested that if we are going to dispose of this case on an issue not previously briefed, that we at least allow both parties to fully brief the issue. I would grant the State's request to require full briefing on the issue and only address the issue after a full opportunity to brief the issue has been afforded both parties. I would not rewrite the opinion based only on the limited briefing in the State's motion for rehearing, without even asking for a response. See Tex. R. App. P. 49.2.
NOTES
[1] Quote from the affidavit from CPS attached to the original petition.
[2] Proceedings such as this are brought in the name of the Texas Department of Protective and Regulatory Services, a State agency.
[3] The day after S.H.C. was born, CPS took custody of the child by court order. Because Paige and Tawnya did not thereafter comply with the Service Plan for S.H.C., CPS filed a petition to terminate parental rights. After a non-jury trial, Paige's and Tawnya's parental rights were terminated.
[4] Clewis v. State, 922 S.W.2d 126, 130-31 (Tex.Crim.App.1996) (Tex. Const. art. V, §§ 5 & 6 empowers the appellate courts to review evidence for sufficiency); Tex. R. App. P. 21.2 (a motion for a new trial is not required to preserve a complaint on appeal except when necessary to adduce facts not in the record); Chesnut v. State, 959 S.W.2d 308, 311 (Tex. App.-El Paso 1997, no pet.) (a claim of factual insufficiency does not need to be preserved); Davila v. State, 930 S.W.2d 641, 649 n. 7 (Tex.App.-El Paso 1996, writ ref'd) (a claim of legal insufficiency does not need to be preserved).
[5] "Core issues" are (1) the predicate grounds for termination, and (2) whether termination is in the best interest of the child.
[6] The presumption is based in part on the general proposition that a long and widely held procedure is strongly presumed to meet due process. E.g., Rivera v. Minnich, 483 U.S. 574, 578, 107 S.Ct. 3001, 3003, 97 L.Ed.2d 473 (1987).
[7] We also note that if we were to affirm regarding Paige's termination and reverse regarding Tawnya'ssince it is not impossible the jury terminated Paige's rights solely because of "B" as alleged in his part of the chargethe result might be that ultimately Paige and Tawnya would be living together in Austin with the children, while Paige has no parental rights. We are unsure if that is in the best interest of the children. If a jury, after hearing the evidence and being properly charged, finds grounds to terminate the rights of one parent and not the other, when the parents are married and have three children and may continue to live together, it may do so. But we will not make a ruling that might effectively accomplish that, because it is not for the appellate courts to decide de novo what is in the best interest of children.