**Earl Danell BELLARD, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**Nos. 10–01–035–CR, 10–01–036–CR.**

Court of Appeals of Texas,
Waco.

Feb. 19, 2003.

Stephen Taylor, Galveston, for appellant.

Michael R. Little, Chambers County Dist. Atty., Steven T. Greene, Chambers County Asst. Dist. Atty., Anahuac, for appellee.

Before Justice VANCE, Justice GRAY, and Senior Justice HILL (Sitting by Assignment).

## OPINION

JOHN G. HILL, Senior Justice (Assigned).

Earl Danell Bellard appeals his conviction by a jury for the offense of possession of marihuana in an amount of 2,000 pounds or less, but more than 50 pounds, and the offense of possession of cocaine in an amount of more than 400 grams, with intent to deliver. Upon Bellard's plea of true to enhancement allegations of three prior felony convictions, the trial court assessed his punishment for each offense at 40 years in the Texas Department of Criminal Justice, Institutional Division. The jury made a finding in each case of the use or exhibition of a deadly weapon. In five issues, Bellard contends that the evidence is legally and factually insufficient to support both of his convictions and that the trial court erred in denying his motion to suppress evidence. We affirm.

■ Bellard contends in issues one, two, three, and four that the evidence is legally and factually insufficient to support his convictions. In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict. *Cardenas v. State*, 30 S.W.3d 384, 389–90 (Tex.Crim. App.2000); *Narvaiz v. State*, 840 S.W.2d 415, 423 (Tex.Crim.App.1992). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex.Crim. App.1997). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

■ In reviewing a challenge to the factual sufficiency of the evidence, we begin with the assumption that the evidence is legally sufficient. *See Santellan v. State*, 939 S.W.2d 155, 164 (Tex.Crim.App. 1997). We must view all the evidence without the prism of the "in the light most favorable to the prosecution" construct. *See Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996). We ask "whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof." *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim.App. 2000); *see also Goodman v. State*, 66 S.W.3d 283, 285 (Tex.Crim.App.2001). We must also remain cognizant of the factfinder's role and unique position-one that the reviewing court is unable to occupy. *Johnson*, 23 S.W.3d at 9. The jury determines the credibility of the witnesses and may "believe all, some, or none of the testimony." *Chambers v. State*, 805 S.W.2d 459, 461 (Tex.Crim.App.1991). It is the jury that accepts or rejects reasonably equal competing theories of a case. *Goodman*, 66 S.W.3d at 287. A decision is not manifestly unjust as to the accused merely because the factfinder resolved conflicting views of evidence in favor of the

State. *Cain v. State*, 958 S.W.2d 404, 410 (Tex.Crim.App.1997).

Derek Prestridge, a state trooper for the Texas Department of Public Safety, testified that on the evening of June 8, 1999, he stopped Bellard as he was driving eastbound on Interstate 10 in Chambers County. He indicated that he stopped Bellard because he failed to drive in a single marked lane of traffic, causing another driver to slow down or apply its brakes. He related that there are several reasons for stopping such a driver, including the possibility of an intoxicated driver, mechanical difficulties with the vehicle, problems with the occupants inside the vehicle, or a fatigued driver.

Officer Prestridge testified that as he was stopping the vehicle, he saw movement inside. He indicated that it appeared that both the front and rear seat passengers were making movements as if the front passenger was ducking down, moving around his seat, or around the glove compartment area. He related that the odor of raw marihuana came to his attention as he was talking to Mr. Degree, a passenger in the back seat. He stated that Bellard was the driver of the vehicle.

Officer Prestridge said that when he and his partner conducted a search of the vehicle, they found a pistol under the front passenger seat, what he believed to be marihuana in the trunk of the car and, underneath the back right passenger seat, a Ritz cracker box containing a white powdery substance that he believed to be cocaine. He indicated that they also found over $1,900 in cash underneath the back seat next to the cracker box. He stated that no one in the car claimed the money. He identified sandwich bags and a rubber glove that he found inside a black bag claimed by Bellard. Officer Prestridge testified that after the vehicle was towed from the scene, he received a Ruger auto-

matic 9 mm pistol that the wrecker driver recovered from between the seat cushions of the driver's seat.

Officer Prestridge testified that on June 11, 1999, he removed the suspected marihuana and cocaine from the evidence locker at the Anahuac highway patrol office and took it to the Houston DPS crime lab for analysis. He indicated that he did not tamper with it in any way. He stated that in his experience those in possession of narcotics often use weapons for the protection of their drugs for transport or sale. He characterized the amount of marihuana and cocaine seized as a large amount. He also indicated that it is not unusual to find more than one subject assisting in the transport of a large quantity of illegal drugs.

On cross-examination, Officer Prestridge testified that, prior to the stop, he saw Bellard cross from one to two feet from the center into the inside lane of the interstate. He indicated that the other vehicle to which he had previously referred was approximately three car lengths away from Bellard's vehicle in the center lane, and one car length behind his own vehicle. He acknowledged that he did not include any mention of this other vehicle in his police report. He stated that Bellard's action in moving into the inside lane potentially placed him and his partner in danger. He assessed the potential danger as the possibility that the driver might have been intoxicated, fatigued, or ill; the possibility that mechanical difficulties were creating a hazardous condition for Bellard's vehicle and the vehicle that was following him; and the possibility that there might be a fight or some type of distress between the driver and passenger.

Officer Prestridge testified that he administered the horizontal gaze nystagmus test to Bellard. He stated that in administering such a test he determines whether

he can find clues to see if someone may or may not have been intoxicated. He acknowledged that he could not find any clues with respect to Bellard. He indicated that he did not recall asking Bellard any questions as to whether he was fatigued. He also acknowledged that he did not recall asking Bellard whether he was having any problems with his vehicle. Officer Prestridge stated that he did ask Bellard whether he was doing all right and, as best he could recall, that Bellard said that he was.

Vu–Hai Phan testified that he is a chemist for the Texas Department of Public Safety. He indicated that the drugs found in the vehicle driven by Bellard consisted of 103.65 pounds of marihuana and 1,220 grams of cocaine.

Robert Hancock testified that he is the owner of Three Aces Wrecker Service. He indicated that he towed the vehicle driven by Bellard first to the Texas Department of Public Safety office and then to his wrecker yard. He related that he found a pistol lying in the floorboard next to the driver's seat. He acknowledged the possibility that the weapon could have moved within the car in the process of unloading the vehicle.

Kenneth Parks testified that he is with the narcotics service of the Texas Department of Public Safety. He related his opinion regarding the market value of the drugs. He indicated that the quantity of the drugs found was sufficient for sale purposes. He stated that it is common for drug dealers to carry weapons to protect themselves from being robbed. He also said that it is common for several individuals to ride with a load to help protect it or for one person to ride in a vehicle with the load, followed by another vehicle containing individuals heavily armed to protect the load.

On cross-examination, Parks testified that it is most common for two or three individuals to be riding together when transporting drugs. On redirect examination, he identified as a drug ledger a document found in the vehicle Bellard was driving. Referring to the sandwich bags found in the vehicle in Bellard's bag, Parks stated that at the street level drugs are usually delivered in a sandwich or Ziploc bag. Referring to the glove found in the vehicle in Bellard's bag, Parks stated that drug dealers use such gloves to ensure that their fingerprints are not left on the narcotics.

Cody Glen Muse testified that he was the officer with Officer Prestridge when he stopped Bellard's vehicle. He confirmed that Bellard crossed one or two feet into the left lane but indicated that it did not place the patrol vehicle in danger. He also indicated that he did not see it put another vehicle in danger. He said that he assumed that Bellard did not put any vehicle in danger. He could not recall whether Officer Prestridge had ever mentioned seeing a vehicle behind Bellard's car that was in danger as a result of Bellard's vehicle moving to the left.

Officer Muse testified that after he and Officer Prestridge stopped Bellard's vehicle, he began asking the passengers for their driver's licenses. He indicated that it is common procedure to request such identification even in the absence of criminal activity on the part of the individuals involved. He related that, after Bellard got out of his vehicle, he was cooperative, was alert, did not appear to have any medical problems, and did not appear to be intoxicated. Officer Muse also testified that he could not detect any odor of marihuana on Bellard. On cross-examination, Officer Muse acknowledged that several times Bellard bobbled his questions and did not seem to give the same answer

twice. He indicated that Bellard's confusion seemed to concern where they had stayed and who was with him when he came into town. He denied that individuals detained in normal traffic stops give confusing or conflicting answers.

Having been recalled to the stand, Officer Prestridge testified that he apparently overlooked the weapon found by the wrecker driver. He acknowledged that he found no significant amount of money on Bellard's person, no drugs in any of the baggies that were recovered, and no drugs inside Bellard's bag.

■■■ In order to establish the offense of unlawful possession of a controlled substance, the State must show the accused exercised actual care, custody, control, or management over the contraband and knew that what he possessed was contraband. *Humason v. State*, 728 S.W.2d 363, 365 (Tex.Crim.App.1987). The control over the contraband need not be exclusive, but can be jointly exercised by more than one person. *Cude v. State*, 716 S.W.2d 46, 47 (Tex.Crim.App.1986). When the accused is not in exclusive control of the place where the contraband is found, the State must show additional affirmative links between the accused and the contraband to show his or her knowledge of or control over the contraband. *Id.*

■■■ The affirmative link customarily emerges from an orchestration of several of a list of factors and the logical force they have in combination. *Whitworth v. State*, 808 S.W.2d 566, 569 (Tex.App.-Austin 1991, pet. ref'd). The evidence in this case establishes affirmative links that raise a reasonable inference of Bellard's knowledge and control of the marihuana and cocaine. These include: (1) the fact that Bellard was driving the car; *See Deshong v. State*, 625 S.W.2d 327, 329 (Tex.Crim. App.1981); (2) the fact that there was a large quantity of marihuana and cocaine;

*See Levario v. State*, 964 S.W.2d 290, 294 (Tex.App.-El Paso 1997, no pet.); (3) the fact that there was a strong smell of marihuana on one of the other occupants in the vehicle; (4) the fact that the individual acknowledging control over the marihuana and cocaine was Bellard's cousin; *See D.R.H. v. State*, 966 S.W.2d 618, 622 (Tex. App.-Houston [14th Dist.] 1998, no pet.); (5) the fact that Bellard's bag contained baggies and a glove which could have been used to process the drugs for sale and to keep one's fingerprints off the drugs; *See Bryant v. State*, 982 S.W.2d 46, 49 (Tex. App.-Houston [1st Dist.] 1998, pet. ref'd); (6) the fact that there was a pistol found on the floor near the driver's seat; and (7) the fact that Bellard was extremely nervous and got out to talk to the officer. Bellard presents affirmative links that were not established, without mentioning or discussing the affirmative links that were established. He refers us to the case of one of the other occupants in the vehicle, *Jenkins v. State*, 76 S.W.3d 709 (Tex. App.-Corpus Christi 2002, pet. ref'd). We find that case to be distinguishable. The court held in *Jenkins* that the evidence was legally insufficient to support the conviction of Jenkins, who was a passenger in the front seat of the vehicle, because it did not link him to the contraband in such a manner and to such an extent that a reasonable inference might arise that he knew of the contraband's existence and exercised control over it. *Id.* at 719. In reaching that conclusion, the court noted that Jenkins, unlike Bellard, was not the driver of the car, and that, unlike Bellard, his luggage contained no drug paraphernalia. *Id.* at 716–17. We believe that these distinctions warrant a different result.

We believe that a reasonable jury could have determined from this evidence that Bellard exercised care, control, or management over the marihuana and cocaine and

knew that what he possessed was contraband. We further hold that the evidence is not so weak as to be clearly wrong and manifestly unjust, that the jury's verdict is not against the great weight and preponderance of the evidence, and that the state of the evidence does not require us to declare the evidence factually insufficient to prevent manifest injustice. Therefore, we hold that the evidence is legally and factually sufficient to support Bellard's convictions. We overrule Bellard's issues one, two, three, and four.

Bellard contends in issue five that the trial court erred in denying his motion to suppress evidence because the troopers stopped him without a warrant. We will review Bellard's motion to suppress evidence applying the standard articulated in *Guzman v. State*, 955 S.W.2d 85, 87–88 (Tex.Crim.App.1997), giving almost total deference to the trial court's determination of historical facts and reviewing *de novo* the court's application of the law of search and seizure. *Carmouche v. State*, 10 S.W.3d 323, 327–28 (Tex.Crim.App.2000). While the trial court did not make explicit findings of historical facts, it appeared to accept Officer Prestridge's testimony that Bellard's change of lanes caused another vehicle to take evasive action.

When a traffic violation is committed within an officer's view, the officer may lawfully stop and detain a person for the traffic violation. *Walter v. State*, 28 S.W.3d 538, 542 (Tex.Crim.App.2000). On a roadway divided into two or more clearly marked lanes for traffic, an operator must drive as nearly as practical entirely within a single lane and may not move from his or her lane unless that movement can be made safely. Tex. Transp. Code Ann. § 545.060(a) (Vernon 1999). Officer Prestridge lawfully stopped Bellard because he observed him violating this provision of the transportation code.

Bellard's contention that the stop was unlawful is based on his assumption that there is no evidence showing that his movement from one lane to another was unsafe. This assumption is in conflict with the trial court's implied finding that Bellard's change of lanes was unsafe because it caused another vehicle to take evasive action. Bellard primarily relies on the cases of *Corbin v. State*, 85 S.W.3d 272 (Tex.Crim.App.2002); *Hernandez v. State*, 983 S.W.2d 867 (Tex.App.-Austin 1998, pet. ref'd); *State v. Tarvin*, 972 S.W.2d 910 (Tex.App.-Waco 1998, pet. ref'd); *State v. Arriaga*, 5 S.W.3d 804 (Tex.App.-San Antonio 1999, pet. ref'd); *Ehrhart v. State*, 9 S.W.3d 929 (Tex.App.-Beaumont 2000, no pet.); and *Aviles v. State*, 23 S.W.3d 74 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). We find all these cases to be distinguishable because none involves a driver changing lanes unsafely, causing another driver to take evasive action. We also note that we have previously upheld the validity of this stop in the unpublished case of *Jerome Louis Degree, Jr., v. State*, (Tex. App.-Waco, July 3, 2002, Nos. 10–01–0016– CR and 10–01–017–CR, pet. denied), for the same reason that we reached that result in this case. We overrule issue five.

The judgment is affirmed.