**Raymond Edward OLIVAS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 10–02–00308–CR to 10–02–00310–CR.**

Court of Appeals of Texas,
Waco.

Nov. 10, 2004.

Stephen A. Gustitis, Waco, for appellant.

Bill R. Turner, Brazos County District Attorney, Bryan, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

BILL VANCE, Justice.

Raymond Olivas was indicted in four separate cases with evading arrest and in a fifth case for aggravated assault and stalking. TEX. PEN.CODE ANN. §§ 22.02, 38.04, 42.072 (Vernon 2003). The five cases were tried together and a jury returned a verdict of guilty in each case. Today, we affirm one evading arrest conviction, a state jail felony (Cause Number 10–02–00312–CR), reverse and render a judgment of acquittal on the aggravated assault (retaliation) count and affirm the judgment on the stalking count (Cause Number 10–02–00311–CR), and reverse the remaining three judgments and remand the causes for a new trial (these cases).

Olivas was found guilty of evading arrest. TEX. PEN.CODE ANN. § 38.04 (Vernon 2003). Under section 38.04(a) of the Penal Code, evading arrest is a Class B misdemeanor. Id. § 38.04(a). If the offense is committed using a vehicle, it becomes a state jail felony under section 38.04(b). Id. § 38.04(b). A state jail felony is punishable by confinement in a state jail for no more than two years and by a fine up to $10,000. Id. § 12.35 (Vernon 2003). However, section 12.35 provides that a state jail felony shall be punished as a third degree felony if it is shown on the trial of the

offense that a deadly weapon was used or exhibited during the commission of the offense or during immediate flight following the commission of the offense. *Id.* Three of the evading arrest verdicts contain findings that a deadly weapon was used; those are the subject of these appeals.

## OLIVAS'S ISSUES

Olivas's primary issues are whether the evidence of identity is legally and factually sufficient to sustain the conviction.

### STANDARD OF REVIEW

■ We review the legal sufficiency of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979). A legal sufficiency review considers "all of the evidence" which the jury was permitted to consider. *Id.* ("*all of the evidence* is to be considered in the light most favorable to the prosecution") (italics in original); *Moff v. State*, 131 S.W.3d 485, 489 (Tex.Crim. App.2004) ("an appellate court must consider *all* evidence actually admitted at trial in its sufficiency review and give it whatever weight and probative value it could rationally convey to a jury") (italics in original). The judgment may not be reversed unless the finding of guilt is irrational or unsupported by proof beyond a reasonable doubt. *Henley v. State*, 98 S.W.3d 732, 735 (Tex.App.-Waco 2003, pet. ref'd).

■ We review factual sufficiency by examining all of the evidence in a neutral light to determine whether a jury was rationally justified in finding guilt beyond a reasonable doubt. *Zuniga v. State*, 144 S.W.3d 477, 484–85 (Tex.Crim.App.2004). There are two ways in which the evidence

may be insufficient. *Id.* First, when considered by itself, evidence supporting the verdict may be too weak to support the finding of guilt beyond a reasonable doubt. *Id.* Second, there may be both evidence supporting the verdict and evidence contrary to the verdict. *Id.* Weighing all the evidence under this balancing scale, the contrary evidence may be strong enough that the beyond-a-reasonable-doubt standard could not have been met, so the guilty verdict should not stand. *Id.* Evidence of guilt can "preponderate" in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt. *Id.* That is, evidence supporting guilt can "outweigh" the contrary proof and still be factually insufficient under the beyond-a-reasonable-doubt standard. *Id.*

■ We must also remain cognizant of the factfinders role and unique position—one that the reviewing court is unable to occupy. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex.Crim.App.2000). The jury determines the credibility of the witnesses and may "believe all, some, or none of the testimony." *Chambers v. State*, 805 S.W.2d 459, 461 (Tex.Crim.App.1991). It is the jury that accepts or rejects reasonably equal competing theories of a case. *Goodman v. State*, 66 S.W.3d 283, 285 (Tex.Crim.App.2001). The evidence is not factually insufficient merely because the factfinder resolved conflicting views of evidence in favor of the State. *See Cain v. State*, 958 S.W.2d 404, 410 (Tex.Crim.App. 1997).

### APPLICATION

■ The offenses were alleged to have occurred on (1) November 27, 2001, by evading Officer John Agnew (# 308), (2) December 24, 2001, by evading Officer Wiesepape (# 309), and December 21,

2001, by evading Officer Hancock (# 310). In each of the cases, the identity of the person who evaded arrest was not proven by direct evidence. None of the officers identified Olivas in court as the driver of the vehicle in the evasions.

 Olivas argues that the evidence is legally insufficient because the officers could not identify him. As to any one evasion standing alone, we might agree; however, the combined evidence of all of the incidents is such that the jury could infer from the totality of the evidence that Olivas was the actor in each instance. Identity can be proven by inferences. *See Sanders v. State*, 119 S.W.3d 818, 820 (Tex. Crim.App.2003); *Roberson v. State*, 16 S.W.3d 156, 157 (Tex.App.-Austin 2000, pet. ref'd). Each of the incidents had a common feature: the actor was driving a beige Pontiac with license plate TLS–33X. Olivas's mother had such a car, and Kim Tunnell (the victim in the stalking charge) testified that she saw Olivas following her in a tan Pontiac that she recognized as his mother's car.

 The answer lies in the standards of review. The legal sufficiency standard of review gives full play to the jury's responsibility fairly to resolve conflicts in the evidence, to weigh the evidence, and to draw reasonable inferences from the evidence. *Bellard v. State*, 101 S.W.3d 594, 596 (Tex.App.-Waco 2003, pet. ref'd). Viewing all of the evidence in the light most favorable to the verdict, as we must, we find the jury acted rationally when it found that Olivas was the person who evaded arrest in each of the three instances. *Henley*, 98 S.W.3d at 735. Viewing all of the evidence in a neutral light, we find that the jury was rationally justified in finding guilt beyond a reasonable doubt. *Zuniga*, 144 S.W.3d at 484–85.

## FUNDAMENTAL CHARGE ERROR

Our examination of the entire record convinces us that we must reverse the judgment in each case because of a fundamental error in the way the jury was charged. We acknowledge that Olivas did not object to this portion of the charge and has not raised the issue on appeal and we are mindful of the admonishment in *Hailey v. State*, cautioning against reversal based on unpreserved complaints of error at trial that violate "ordinary notions of procedural default." *Hailey v. State*, 87 S.W.3d 118, 121–22 (Tex.Crim.App.2002). For reasons we will state, review of the fundamental charge error in these three cases does not violate the rules about procedural default.

### AUTHORITY TO REVIEW

 It has long been settled that no assignment of error on appeal is required in a criminal case. *Carter v. State*, 656 S.W.2d 468, 468 (Tex.Crim.App.1983) (State's position that court of appeals "has no jurisdiction to entertain unassigned error regardless of the fundamental nature of the error in question" is untenable.); *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim.App.1990) ("The State's contention that the Court of Appeals erred by addressing unassigned error is overruled."). "There is a fundamental proposition pertaining to appellate functions of the Judicial Department: A constitutional grant of appellate jurisdiction treats a right of appeal in criminal cases 'as a remedy to revise the whole case upon the law and facts, as exhibited in the record, ....'" *Carter*, 656 S.W.2d at 468 (citing *The Republic v. Smith*, Dallam, 407, 1841 WL 3098 (Tex.)). Thus, once jurisdiction of an appellate court is invoked, exercise of its reviewing functions is limited only by its own discretion or a valid restrictive statute. *Id.* at 469; *see also Perry v. State*, 703 S.W.2d 668, 670 (Tex.Crim.App.1986).

The Texas Constitution and the statutes provide "a broad scope of review and revision ... that is still recognized, acknowledged and confirmed by the Legislature." *See Carter,* 656 S.W.2d at 469; TEX.CODE CRIM. PROC. ANN. art. 44.25 (Vernon Supp. 2004); *see also Goodman v. State,* 935 S.W.2d 184, 186 (Tex.App.-Austin 1996, no pet.) ("We conclude that the ex post facto violation that occurred in this instance was an unassigned fundamental error.").

 It is further well settled that we also have the authority to review unpreserved fundamental charge error. In *Saldano v. State,* the Court of Criminal Appeals observed:

The courts of every jurisdiction in this country have some doctrine that permits appellate courts to consider claims that such fundamental rights were violated without objection. [Footnote omitted.] In the criminal law of this state, such errors are called "fundamental."

One such class of fundamental errors has been recognized by the legislature. A statute permits our appellate courts to consider claims that an error in the court's charge to the jury, to which no objection was made, was so grave as to deny a defendant a fair trial.

*Saldano v. State,* 70 S.W.3d 873, 887 (Tex. Crim.App.2002) (citing article 36.19 of the Code of Criminal Procedure and *Almanza v. State,* 686 S.W.2d 157 (Tex.Crim.App. 1984)). With most charge errors, whether an objection to the charge was made at trial affects the standard for determining whether sufficient harm resulted from the error to require reversal. *Abdnor v. State,* 871 S.W.2d 726, 731 (Tex.Crim.App.1994).

This is similar to the federal "plain error" doctrine. *See Blue v. State,* 41 S.W.3d 129, 133 (Tex.Crim.App.2000) (fun-

damental error of constitutional dimension requires no objection).

A prior review by this court of this type of charge error was specifically approved by the Court of Criminal Appeals. During the period in our state's jurisprudence when a definitional instruction on reasonable doubt was required in every charge[1] we decided in *Kieschnick v. State* that an unpreserved error in omitting the instruction from the charge was fatal to the conviction. *Kieschnick v. State,* 911 S.W.2d 156, 161 (Tex.App.-Waco 1995) (op'n on reh'g) ("Kieschnick did not object to the charge in the trial court or raise the court's use of an erroneous charge as a point of error in his brief. Nevertheless, we conclude that we have no choice but to reverse the judgment and remand the cause for another trial."). Our decision was approved by the Court of Criminal Appeals in *Reyes v. State,* 938 S.W.2d 718, 720–21 (Tex.Crim.App.1996) ("[W]e hold *Geesa [v. State]* created an absolute systemic requirement that an instruction on reasonable doubt be submitted to the jury in all cases where the burden of proof requires the jury to find guilt beyond a reasonable doubt and the failure to submit such an instruction is automatic reversible error."), *overruled by Paulson v. State,* 28 S.W.3d 570, 573 (Tex.Crim.App.2000). In *Kieschnick,* the error was failing to include the definition of reasonable doubt; here the error is failing properly place the burden of proof and to require that the jury find use of a deadly weapon beyond a reasonable doubt.

THE COURT'S CHARGE

In each of these three cases, the court charged the jury at the guilt-innocence phase on the deadly weapon issue by asking an extra question on the verdict form

---

1. *See Geesa v. State,* 820 S.W.2d 154 (Tex. Crim.App.1991), *partially overruled by Paul-* son v. State, 28 S.W.3d 570, 573 (Tex.Crim. App.2000).

after the jury had determined whether Olivas had evaded arrest using a vehicle:

> Answer the Deadly Weapon Question only if you have found the defendant guilty. Otherwise do not answer the Deadly Weapon Question.

### DEADLY WEAPON

WE, THE JURY, find the defendant, RAYMOND OLIVAS, **did use** a deadly weapon during the commission of the offense alleged in the indictment.

_____

### PRESIDING JUROR

WE, THE JURY, find that the defendant, RAYMOND OLIVAS, **did *not* use** a deadly weapon during the commission of the offense alleged in the indictment.

_____

### PRESIDING JUROR

In each, the jury found that Olivas "did use" a deadly weapon. We believe that this submission of the Deadly Weapon question was erroneous for three reasons.

### Burden of Proof

■ First, the court did not properly place the burden of proof regarding the deadly weapon issue on the State. The form of the submission renders it unclear who had the burden of proof on the issue and suggests both that the State had the burden to prove use and that Olivas had the burden to disprove use of a deadly weapon.

■ The prosecution bears the burden of proving all elements of an offense and must persuade the factfinder beyond a reasonable doubt of the facts necessary to establish each of those elements. *Sullivan v. Louisiana*, 508 U.S. 275, 278, 113 S.Ct. 2078, 2080, 124 L.Ed.2d 182 (1993). The use or exhibition of a deadly weapon is not an element of the state jail felony of evasion, but the State is required to prove such use when, as here, it wants to increase the punishment beyond the statutory maximum for a state jail felony. The Supreme Court has said that a sentencing enhancement that increases punishment beyond the maximum statutory sentence "is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict." *Apprendi v. New Jersey*, 530 U.S. 466, 494 n. 19, 120 S.Ct. 2348, 2365 n. 19, 147 L.Ed.2d 435 (2000). Thus, a charge allowing a finding of use of a deadly weapon to enhance the offense to a third degree felony under section 12.35 must properly place the burden of proof on the State as part of the law applicable to the case. This charge did not.

### Quantum of Proof

■ Second, the charge did not require that the jury make the finding that Olivas used a deadly weapon "beyond a reasonable doubt." The trial court gave a reasonable doubt instruction only in the main body of the charge regarding the elements of the state jail felony of evading a peace officer by fleeing in a vehicle. Thus, an *Apprendi* violation occurred.

■ Any fact (other than prior conviction) that increases the maximum penalty for a crime beyond the prescribed statutory maximum must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt. *See Apprendi*, 530 U.S. at 476–77, 120 S.Ct. at 2355–56. ("At stake in this case are constitutional protections of surpassing importance: the proscription of any deprivation of liberty without 'due process of law,' Amdt. 14, and the guarantee that '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury,' Amdt. 6. Taken together, these rights indisputably entitle a criminal defendant to 'a jury determination that [he] is guilty of every element of the

crime with which he is charged, beyond a reasonable doubt.' "). The statutory maximum for *Apprendi* purposes is not the maximum sentence that may be imposed after finding additional facts, but the maximum that may be imposed without any additional findings. *See Blakely v. Washington*, —— U.S. ——, ——, 124 S.Ct. 2531, 2537, 159 L.Ed.2d 403 (2004). The statutory maximum for the state jail felony of evading arrest using a vehicle is two years' confinement and a fine of up to $10,000. In each case, Olivas was sentenced for a third degree felony on the basis of a finding that, although made by the jury, was not made beyond a reasonable doubt. *See Apprendi*, 530 U.S. at 490, 120 S.Ct. at 2363 ("It is equally clear that such facts must be established by proof beyond a reasonable doubt.").

WHEN TO SUBMIT THE DEADLY WEAPON ISSUE UNDER SECTION 12.35

 Third, a question that appears unanswered is: when should the court charge the jury on the deadly weapon issue under section 12.35? TEX. PEN.CODE ANN. § 12.35.

Section 12.35 is a punishment statute, and its plain language requires that the defendant has been "adjudged guilty of a state jail felony." *Id.* Punishment is then for a third degree felony if it is shown that the defendant used or exhibited a deadly weapon. *Id.* As we have noted, in each case the Deadly Weapon issue was presented to the jury at the guilt-innocence stage of trial. Then, at the punishment stage, the jury was instructed that their findings on guilt-innocence rendered the offense a third degree felony and was asked to determine punishment within the range of not less than two years or more than ten years in prison and a fine of up to $10,000.

Case law does not provide much guidance on the issue. The Court of Criminal Appeals has said that a deadly weapon finding, for the purposes of precluding community supervision under article 42.12 section 3(g) of the Code of Criminal Procedure, may be made at either the guilt-innocence or punishment stage. *See Polk v. State*, 693 S.W.2d 391, 394 (Tex.Crim. App.1985); TEX.CODE CRIM. PROC. ANN. art. 42.12 § 3(g) (Vernon Supp.2003). We would not, however, apply the *Polk* decision to section 12.35 deadly weapons findings. *See Fann v. State*, 702 S.W.2d 602, 604–5 (Tex.Crim.App.1985) (stating that "[a]n affirmative finding can be and is perhaps more suited to be a punishment issue"); *Polk*, 693 S.W.2d at 394 n. 3 (noting that although article 37.07 section 1(a) does not mandate that the finding be made at punishment, the statement that all criminal verdicts must be general indicates that making the finding at punishment is the preferred practice); *cf. Hill v. State*, 913 S.W.2d 581, 586 (Tex.Crim.App.1996) (stating that sections 4(a) and 4(b) of article 37.07 of the Texas Code of Criminal Procedure implicitly require a 42.12 section 3(g) deadly weapon issue to be submitted at the guilt-innocence stage so that the trial court will know which parole law instruction to give the jury during the punishment phase).

There are at least two reasons why this type of deadly weapon issue should be reserved to the punishment phase. First, evidence about the use of an object as a deadly weapon should not be admitted at the guilt-innocence phase when, as here, use of a deadly weapon is not a statutory element of the offense. *See* TEX. PEN.CODE ANN. § 38.04. Second, in the event an appellate court found a defect in the deadly-weapon submission requiring reversal, the remand would ordinarily be limited to a new punishment hearing (since the finding

is on a punishment issue); otherwise, a new trial will be required.

COUNTERARGUMENT

It might be argued that because the main body of the charge defined the term "deadly weapon" for the jury, placed the burden of proof on the state "throughout the trial," and called for proof beyond a reasonable doubt for "each element of the offense," those provisions carry over to the Deadly Weapon question on the verdict form. However, the fact that the Deadly Weapon question was conditioned on a finding of guilt and provided spaces for answers for both "did use" and "did not use" removed that question from the general instructions. A similar argument concerning a statutorily mandated instruction about the effect of a presumption was rejected by the Tyler Court in *State v. Lewis*. *State v. Lewis*, 151 S.W.3d 213, 223 (Tex.App.-Tyler 2004, no pet. h.) (citing *Francis v. Franklin*, 471 U.S. 307, 319–20, 105 S.Ct. 1965, 1974, 85 L.Ed.2d 344 (1985)).

We find the court's charge to the jury to be erroneous.

## HARM ANALYSIS

Having found error in the court's charge, we turn to the question of a harmless error analysis.

HARM ANALYSIS NOT REQUIRED

 Without a proper charge placing the burden of proof on the State and requiring that the jury find use of a deadly weapon beyond a reasonable doubt, "there has been no jury verdict within the meaning of the Sixth Amendment," so the entire premise of a harm analysis "is simply absent." *Sullivan*, 508 U.S. at 280, 113 S.Ct at 2082. Thus, this error appears to be one of the "federal constitutional errors labeled by the United States Supreme Court as 'structural'" which is immune

from a harmless error analysis. *See Cain v. State*, 947 S.W.2d 262, 264 (Tex.Crim. App.1997). The charge is fundamentally erroneous.

HARM ANALYSIS IF REQUIRED

 When error in the charge was not the subject of a timely objection to the trial court, reversal will occur under *Almanza* only when the error was "fundamental" and "so egregious and created such harm that the defendant 'has not had a fair and impartial trial.'" *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim. App.1985) (on rehearing). An error results in egregious harm if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Hutch v. State*, 922 S.W.2d 166, 171 (Tex.Crim.App.1996). The harm is determined by considering the entire charge; the state of the evidence, including contested issues and the weight of the probative evidence; the argument of counsel; and any other relevant information revealed by the record as a whole. *Mann v. State*, 964 S.W.2d 639, 641 (Tex.Crim.App.1998). Considering all of those factors, we are left with the conclusion that the court's judgment is based on a finding of the use of a deadly weapon that was not made by the jury "beyond a reasonable doubt." TEX. PEN.CODE ANN. § 2.01 (Vernon 2003). Thus, the error "affects the very basis of the case" and is "fundamental" and "egregious." *Hutch*, 922 S.W.2d at 171.

ALTERNATE HARM ANALYSIS

 Although we do not believe that this type of error is subject to harmless error review, because it involves a federal constitutional question, *i.e.*, failure to accord due process in obtaining the required jury findings beyond a reasonable doubt, we also address whether the error in each

case was harmless under Rule 44.2. TEX. R.APP. P. 44.2(a). Based on the record before us, we cannot say beyond a reasonable doubt that the error did not contribute to Olivas's conviction or punishment. *See id.; Cobb v. State,* 93 S.W.3d 1, 6 (Tex.Crim.App.2000) (citing *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967)).

## CONCLUSION

Having found fundamental federal constitutional error, we reverse the judgment in each case. Alternatively, we find under the appropriate harmless error analysis that Olivas was harmed in each case by the fundamentally erroneous charge. We remand each cause to the trial court for a new trial.

Chief Justice GRAY dissenting.

TOM GRAY, Chief Justice, dissenting.

A majority of this Court has previously found unassigned error. *E.g., Hailey v. State,* 50 S.W.3d 636 (Tex.App.-Waco 2001), *rev'd,* 87 S.W.3d 118 (Tex.Crim.App. 2002); *In re B.L.D.,* 56 S.W.3d 203 (Tex. App.-Waco 2001) (per curiam), *rev'd,* 113 S.W.3d 340 (Tex.2003). The Court has been reversed. *E.g., Hailey v. State,* 87 S.W.3d 118, 121–22 (Tex.Crim.App.2002), *cert. denied,* 538 U.S. 1060, 123 S.Ct. 2218, 155 L.Ed.2d 1111 (2003); *In re B.L.D.,* 113 S.W.3d 340, 350–51 (Tex.2003), *cert. denied sub nom. Dossey v. Tex. Dep't of Protective & Reg. Servs.,* 541 U.S. 945, 124 S.Ct. 1674, 158 L.Ed.2d 371 (2004). There is virtually no such thing as unassigned error. *Id.* There is none to be addressed here.

A majority of this Court has previously found fundamental error. *E.g., Rushing v. State,* 50 S.W.3d 715, 722–25 (Tex.App.-Waco 2001), *aff'd on other grounds,* 85 S.W.3d 283, 284–87 (Tex.Crim.App.2002); *B.L.D.,* 56 S.W.3d at 214–15; *In re J.F.C.,*

57 S.W.3d 66, 74 (Tex.App.-Waco 2001), *rev'd,* 96 S.W.3d 256 (Tex.2002). The Court has been reversed and been held to have erred. *E.g., Rushing v. State,* 85 S.W.3d 283, 284–87 (Tex.Crim.App.2002); *B.L.D.,* 113 S.W.3d at 350–51; *In re J.F.C.,* 96 S.W.3d 256, 272–74, 277–79 (Tex.2002). There is almost no such thing as fundamental error. *Mendez v. State,* 138 S.W.3d 334, 340–42 (Tex.Crim.App. 2004); *Saldano v. State,* 70 S.W.3d 873, 887–89 (Tex.Crim.App.2002); *Paulson v. State,* 28 S.W.3d 570, 573 (Tex.Crim.App. 2000) (reasonable doubt instruction not absolute systemic requirement). There is no fundamental error in the charge without egregious harm. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1985) (op. on reh'g). There is no fundamental error here.

The majority again finds unassigned and fundamental error here. I dissent.