IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-07-00151-CR

 

Billy Joe Gibson,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 13th District
Court

Navarro County, Texas

Trial Court No. 30,862

 



MEMORANDUM  Opinion



 

In a bench trial, Billy Joe Gibson was
convicted of possession of a controlled substance and sentenced to sixteen
months confinement in a state jail facility.  On appeal, he argues that the
evidence is legally and factually insufficient to support his conviction.  We
will affirm.

Background

            On September 11, 2006,
Officer Boatright, a member of the Navarro College Police Department, stopped
Gibson for failure to use a turn signal on the campus of Navarro College.  After Gibson consented to a search of his vehicle, the officer found .03 grams of
cocaine in the car.

Legal and
Factual Sufficiency

In his sole issue, Gibson argues that
the evidence is legally and factually insufficient to support his conviction due
to a lack of affirmative links connecting him to the cocaine.

When reviewing a challenge to the legal
sufficiency of the evidence to establish the elements of a penal offense, we
must determine whether, after viewing all the evidence in the light most
favorable to the verdict, any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560
(1979).  Our duty is to determine if the finding of the trier of fact is
rational by viewing all of the evidence admitted at trial in the light most
favorable to the verdict.  Adelman v. State, 828 S.W.2d 418, 422 (Tex.
Crim. App. 1992).  In doing so, any inconsistencies in the evidence are
resolved in favor of the verdict.  Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

In a factual sufficiency review, we ask
whether a neutral review of all the evidence, though legally sufficient,
demonstrates either that the proof of guilt is so weak or that conflicting
evidence is so strong as to render the factfinder’s verdict clearly wrong and
manifestly unjust.  Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim.
App. 2006); Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). 
“The court reviews the evidence weighed by the jury that tends to prove the
existence of the elemental fact in dispute and compares it with the evidence
that tends to disprove that fact.”  Johnson, 23 S.W.3d at 7 (quoting Jones
v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996)).  The appellate court
“does not indulge in inferences or confine its view to evidence favoring one
side of the case.  Rather, it looks at all the evidence on both sides and then
makes a predominantly intuitive judgment. . . .”  Id. (quoting William
Powers and Jack Ratliff, Another Look at “No Evidence” and “Insufficient
Evidence,” 69 Texas L. Rev. 515, 519 (1991)).

To prove drug possession, the State must
show 1) a defendant exercised care, custody, control, or management over the
contraband, and 2) that he knew he possessed a controlled substance.  Rischer
v. State, 85 S.W.3d 839, 843 (Tex. App.—Waco 2002, no pet.).  A defendant's
knowing possession of contraband may not be proved merely by his presence at
the scene when the drugs were found, unless the defendant had been in exclusive
possession of that location.  See Hudson v. State, 128 S.W.3d 367, 374 (Tex. App.—Texarkana 2004, no pet.).  The control over the contraband need not be exclusive,
but can be jointly exercised by more than one person.  Cude v. State,
716 S.W.2d 46, 47 (Tex. Crim. App. 1986).

When the defendant is not in exclusive
control of the place where the contraband is found, the State must show
additional affirmative links between the defendant and the contraband to show his
knowledge of or control over the contraband.  Id.  Factors which have
been considered affirmative links include: 1) the defendant’s presence when the
search was executed; 2) contraband in plain view; 3) the defendant’s proximity
to and accessibility of the contraband; 4) the defendant’s being under the
influence of contraband when arrested; 5) the defendant's possession of other
contraband when arrested; 6) the defendant's incriminating statements when
arrested; 7) attempted flight; 8) furtive gestures; 9) odor of the contraband;
10) presence of other contraband; 11) the defendant's right to possession of
the place where contraband was found; and 12) drugs found in an enclosed place. 
 Medina v. State, 242 S.W.3d 573, 576 (Tex. App.—Waco 2007, no
pet.) (mem. op.); see Harris v. State, 994 S.W.2d 927, 933 (Tex. App.—Waco
1999, pet. ref’d).  The number of factors present is not as important as the
"logical force" or the degree to which the factors, alone or in
combination, tend affirmatively to link the defendant to the contraband.  See
Bellard v. State, 101 S.W.3d 594, 599 (Tex. App.—Waco 2003, pet. ref’d).  Furthermore,
the defendant must be affirmatively linked to the contraband itself rather than
the area where it was found.  Mendoza v. State, 583 S.W.2d 396, 399
(Tex. Crim. App. 1979).

Gibson argues that the State failed to
establish sufficient affirmative links between him and the cocaine for several
reasons.  First, Gibson claims that a friend owned the car he was driving. 
Allegedly, the vehicle’s owner asked Gibson to use the car to pick up his
brother from Navarro College.  Second, he had only been in the car for five
minutes when he was pulled over, and he did not notice the small amount of
cocaine found in the front and back seats.

Gibson further argues that the total
weight of the contraband was only .03 grams and most of it was found in the
glove compartment on the passenger side of the vehicle.  Even though a small
portion of the contraband was found in the driver’s seat of the car, it was in
powder form and therefore not conveniently accessible to Gibson.  Moreover,
when he was pulled over by Boatright, Gibson was not under the influence of
drugs, there were no drugs or paraphernalia on his person, he did not make
furtive gestures, he never attempted to flee, and instead he offered to allow
Boatright to search the vehicle before Boatright asked.  He also argues that
Boatright testified that he had previous experience with the vehicle’s owner
and knew him to be a person who used cocaine.

The State counters that the evidence presented at trial is legally
and factually sufficient to convict Gibson by pointing to several factors that
establish an affirmative link; specifically, that: (1) the cocaine was located
in the front seat of the vehicle, in the back seat, and the glove compartment,
all locations conveniently accessible to Gibson.  Gilbert v. State, 874
S.W.2d 290, 298 (Tex. App.—Houston [1st Dist.] 1994, pet ref’d).  (2) the
cocaine in the front seat and the back seat was in plain view.  Roberson v.
State, 80 S.W.3d 730, 735 (Tex. App.—Houston [1st Dist.] 2002, pet. ref’d);
(3) Gibson was the driver of the vehicle when Boatright found the cocaine and
being the driver of a vehicle in which contraband is found is considered an
affirmative link to the contraband.  Powell v. State, 112 S.W.3d 642,
645-46 (Tex. App.—Houston [1st Dist.] 2003, pet. ref’d); (4) the cocaine was
found in an enclosed space.  Robinson v. State, 174 S.W.3d 320, 327
(Tex. App.—Houston [1st Dist.] 2005, pet. ref’d); and (5) the conduct of the defendant
indicated a consciousness of guilt.  Gilbert, 874 S.W.2d at 298.  We
agree with the State.

In this case, Gibson was the driver of
the vehicle in which the contraband was found.  Some of the cocaine was
discovered in plain view on the back seat of the vehicle, and all of the
cocaine was conveniently accessible to Gibson.  Although, some of the cocaine
was recovered from the passenger side of the vehicle, some of the cocaine was
also recovered from the driver's seat where Gibson was sitting.  Along with the
cocaine, Boatright testified that when he pulled Gibson
over and asked him for his identification, Gibson appeared to be extremely
nervous, wide-eyed and sweating profusely.  According to Boatright, Gibson was
talking in a fast non-stop manner and it was because of this excited emotional
condition that Boatright decided to further investigate Gibson by asking for
his consent to search the vehicle.

In viewing the evidence in the light
most favorable to the verdict, we cannot say that a rational trier of fact
could not have found guilt beyond a reasonable doubt or that the court was not
rationally justified in finding guilt.  Curry, 30 S.W.3d at 406. 
Accordingly, we find that the evidence is legally sufficient to support a
finding that Gibson knowingly possessed cocaine as alleged.  In viewing the
evidence in a neutral light, we find that the court was justified in finding
Gibson guilty.  Watson, 204 S.W.3d. at 415.  The record shows that some
of the cocaine was found in the car Gibson was driving, was in plain view on
the same seat where he was sitting and in plain view on the back seat.  We do
not find this evidence so weak or the contrary evidence so strong as to render
the verdict manifestly unjust.  Accordingly, we find that the evidence is
factually sufficient to support a finding that Gibson knowingly possessed
cocaine as alleged.  We overrule Gibson’s sole issue.

Conclusion

Having overruled Gibson’s sole issue, we
affirm the judgment of the trial court.

 

 

BILL VANCE

Justice

 

 

 

Before Chief
Justice Gray,

            Justice
Vance, and

            Justice
Reyna

            (Chief
Justice Gray concurs in the judgment with a note)*

Affirmed 

Opinion
delivered and filed December 17, 2008

Do not publish

[CR25]

 

*(Chief Justice
Gray concurs in the judgment of the Court to the extent it affirms the trial
court’s judgment of conviction and sentence.  A separate opinion will not
issue.)








 






factors for determining reversible jury argument require Appellants to prove (1)
an error (2) that was not invited or provoked, (3) that was preserved by the proper trial predicate,
such as an objection, a motion to instruct, or a motion for a mistrial, and (4) was not curable by
an instruction, a prompt withdrawal of the statement, or a reprimand by the judge. To prove
incurable error, Appellants have the additional burden to prove (5) that the argument by its nature,
degree and extent constituted reversibly harmful error. How long the argument continued,
whether it was repeated or abandoned, and whether there was cumulative error are proper
inquiries. All of the evidence must be closely examined to determine (6) the argument's probable
effect on a material finding. (7) Importantly, a reversal must come from an evaluation of the
whole case, which begins with the voir dire and ends with the closing argument. The record may
show that the cause is weak, strong, or very close. From all of these factors, Appellants must
show the probability that the improper argument caused harm is greater than the probability that
the verdict was grounded on the proper proceedings and evidence. See id. at 839, 840.
          We will first determine if counsel's argument concerning "pieces of eight, pieces of eight"
was error. In Reese the Court found no error when the attorney argued that adverse counsel had
concocted "a sham or a plot" and had engaged in a "combination" based on evidence that he sent
his client across town to his own doctor. Certainly, counsel's argument here had a factual basis
in the evidence and was less offensive that than in Reese. We do not find that the argument was
error; however, since the Court sustained a general objection and instructed the jury not to
consider the argument, we will consider whether the argument was provoked.
          Prior to Appellee's argument, counsel for Appellants made an impassioned plea to the jury
mentioning the horrors of the Holocaust and the difficulties of dealing with "the murder and when
we see how many million people were killed." He described the case as "a gruesome accounting
for life." He urged "in this particular case you must do that, and we've asked for the estate of
Kathryn Wilson $1,100,000 for her pain, her suffering, her burial expenses and for her medical
expenses." He then requested the jury to consider "the loss of your mother," asking the jury to
award an additional $2,500,000. He concluded by stating to the jury that horses, paintings and
jelly sell "for millions of dollars, millions and millions and millions." Here, Appellants' counsel's
response seems appropriate and reasonable. The hyperbole employed by counsel was one of the
approved methods of argument suggested by the Reese court. 
          Even though we find the argument was a proper response to Appellants' argument, we will
further consider whether the error, if any, was harmful. The Court gave an instruction to the jury
to disregard the argument. An instruction to disregard usually renders the error harmless because
an appellate court will presume that the jury followed the instruction. McInnes v. Yamaha Motor
Corp. U.S.A., 659 S.W.2d 704, 712 (Tex. App.—Corpus Christi 1983), affirmed on other
grounds, 673 S.W.2d 185 (Tex. 1984), cert. denied, 469 U.S. 1107 (1985). Accordingly, even
if the argument concerning "pieces of eight" was improper, any error in this respect was rendered
harmless. We do not find that the argument violated the factors in Reese concerning "incurable"
error, when we consider the case as a whole, beginning with jury voir dire and ending with the
final argument. As stated in Reese, "There are only rare instances of incurable harm from
improper argument". See Reese, 584 S.W.2d at 839. The argument was not repeated and was
not so severe or prolonged as to result in reversible error. We overrule points one and two and
affirm the judgment.
 
                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice
Before Chief Justice Thomas,
          Justice Cummings and
          Justice Vance
Affirmed
Opinion delivered and filed October 9, 1991
Do not publish